KEVIN R. STOLWORTHY, ESQ.
Nevada Bar No. 2798
TRACY A. DIFILLIPPO, ESQ.
Nevada Bar No. 7676
ARMSTRONG TEASDALE LLP
7160 Rafael Rivera Way, Suite 320
Las Vegas, Nevada 89113
Telephone:  702.678.5070
Facsimile:  702.878.9995
kstolworthy@atllp.com
tdifillippo@atllp.com

*Attorneys for Plaintiff*
*Admiral Insurance Company*

# UNITED STATES DISTRICT COURT

## DISTRICT OF NEVADA

| | |
|---|---|
| ADMIRAL INSURANCE COMPANY,<br><br>Plaintiff,<br><br>vs.<br><br>KABUL, INC. d/b/a FASTRIP PWC RENTALS,<br>KABUL, INC. d/b/a FASTRIP FOOD STORE,<br><br>Defendants. | Case No.:<br><br>**COMPLAINT** |

Plaintiff ADMIRAL INSURANCE COMPANY ("Admiral") by and through its counsel, Armstrong Teasdale LLP, hereby makes its Complaint against KABUL, INC. D/B/A/ FASTRIP PWC RENTALS and KABUL, INC. D/B/A FASTRIP FOOD STORE (collectively "Kabul"), and allege as follows:

**PARTIES, JURISDICTION, AND VENUE**

1. Admiral is a Delaware corporation with its principal place of business located in Arizona.  Admiral is a citizen of the States of Delaware and Arizona.

2. Defendant Kabul is and was at all times relevant herein, an Arizona corporation with its principle place of business 1131 Highway 95, Bullhead City, Arizona 86429.  Defendant Kabul is, and was at all times relevant herein, a citizen of the State of Arizona.

3. Admiral paid for the defense of Kabul and to settle the lawsuit against Kabul in the lawsuit filed by Tommy Lynch and April Black ("underlying plaintiffs") in the United States District

1

Court of Nevada, Case No. 2:21-cv-01981 (the "Lynch Action") under the insurance Policy that insured Kabul's watercraft used on the Colorado River and for an incident that occurred on the Colorado River.

4. The Court has admiralty jurisdiction pursuant to 28 U.S.C. § 1331 because the insurance Policy insured certain of Kabul's watercraft that it rented to customers to be used on the Colorado River and the issue whether Admiral is entitled to reimbursement for payments made under the insurance Policy relating to a watercraft that was not covered under the Policy and involved in the Lynch Action.

5. The District of Nevada is the proper venue under 28 U.S.C. § 1391 because the defense and settlement payments were made in Clark County, Nevada for the Lynch Action that was filed in the U.S. District of Nevada.

## THE LYNCH ACTION

6. The underlying plaintiffs filed the Complaint in the Lynch Action on October 28, 2021. A true and correct copy of the Complaint in the Lynch Action is attached hereto as **Exhibit "1."**

7. In the Lynch Action, the underlying plaintiffs alleged that on August 21, 2020, the date of the Incident, Kabul rented a Yamaha watercraft to Darryl Alexander, negligently entrusted the watercraft to Alexander by failing to ensure that Alexander would operate the watercraft in a safe and reasonable manner, and failed to warn/instruct Alexander about the safe use and operation of the watercraft.

8. It was alleged that Kabul was negligent in failing to maintain, repair, store, and/or otherwise operate the watercraft or vehicle in a safe and proper manner or in compliance with legal requirements.

9. The underlying plaintiffs further alleged that Alexander, the person who rented the watercraft from Kabul and who was operating it at the time of Tammy Lynch's death, was negligent in stopping the watercraft in a highly trafficked area to speak to Tammy Lynch and ask Tammy Lynch a question, doing so suddenly and without scanning to see if there were other watercraft in the proximity.

10. In the Lynch Action, the underlying plaintiffs set forth a claim for negligence against Kabul.

## THE ADMIRAL POLICY AND THE JET SKI

11. For the policy period of May 22, 2020 to May 22, 2021, Admiral issued a Commercial Lines Insurance Policy No. Policy No. CA000038462-01 ("Policy") to its named insured, Kabul.

12. The Commercial General Liability Coverage Form provides Coverage A – Bodily Injury and Property Damage Liability. The Policy provides coverage limits of $1 million each occurrence and $2 million in the aggregate.

13. The Insuring Agreement for Coverage A – Bodily Injury and Property Damage Liability provides in pertinent part:

> **COVERAGE A – BODILY INJURY AND PROPERTY DAMAGE LIABILITY**
>
> **1. Insuring Agreement**
>
> **a.** We will pay those sums that the insured becomes legally obligated to pay as damages because of "bodily injury" or "property damage" to which this insurance applies. We have the right and duty to defend the insured against any "suit" seeking those damages. However, we will have no duty to defend the insured against any "suit" seeking damages for "bodily injury" or "property damage" to which this insurance does not apply. We may, at our discretion, investigate any "occurrence" and settle any claim or "suit" that may result.
>
> * * *
>
> No other obligation or liability to pay sums or perform acts or services is covered unless explicitly provided under Supplementary Payments—Coverages **A** and **B**.
>
> **b.** This insurance applies to "bodily injury" and "property damage" damage only if:
>
> **(1)** The "bodily injury" or "property damage" is caused by an "occurrence" that takes place in the "coverage territory";
>
> **(2)** The "bodily injury" or "property damage" occurs during the policy period; and
>
> **(3)** Prior to the policy period, no insured listed under Paragraph **1.** of Section **II** – Who is An Insured and no "employee" authorized by you

3

to give or receive notice of an "occurrence" or claim, knew that the "bodily injury" or "property damage" had occurred, in whole or in part. If such a listed insured or authorized "employee" knew, prior to the policy period, that the "bodily injury" or "property damage" occurred, then any continuation change or resumption of such "bodily injury" or "property damage" during or after the policy period will be deemed to have been known prior to the policy period.

* * *

14. The Policy for Coverage A, provides the following exclusions:

    **2. Exclusions**

    This insurance does not apply to:

    * * *

    **g. Aircraft, Auto Or Watercraft**

    "Bodily injury" or "property damage" arising out of the ownership, maintenance, use or entrustment to others of any aircraft, "auto" or watercraft owned or operated by or rented or loaned to any insured. Use includes operation and "loading or unloading".

    This exclusion applies even if the claims against any insured allege negligence or other wrongdoing in the supervision, hiring, employment, training or monitoring of others by that insured, if the "occurrence" which caused the "bodily injury" or "property damage" involved the ownership, maintenance, use or entrustment to others of any aircraft, "auto" or watercraft that is owned or operated by or rented or loaned to any insured.

    This exclusion does not apply to:

    **(1)** A watercraft while ashore on premises you own or rent;

    **(2)** A watercraft you do not own that is:

    **(a)** Less than 26 feet long; and

    **(b)** Not being used to carry persons or property for a charge;

    **(3)** Parking an "auto" on, or on the ways next to, premises you own or rent, provided the "auto: is not owned by or rented or loaned to you or the insured;

    **(4)** Liability assumed under any "insured contract" for ownership, maintenance or use of aircraft or watercraft; or

    **(5)** "Bodily injury" or "property damage" arising out of:

4

    **(a)** The operation or machinery or equipment that is attached to, or part or, a land vehicle that would qualify under the definition of "mobile equipment" if it were not subject to a compulsory or financial responsibility law or other motor vehicle insurance law where it is licensed or principally garaged; or

    **(b)** The operation of any of the machinery or equipment listed in Paragraph **f.(2)** or **f.(3)** of the definition of "mobile equipment".

15. The Policy contains the following definitions for Coverage A:

**SECTION VI – DEFINITIONS**

**3.** "Bodily injury" means physical injury, physical sickness or physical disease sustained by any one person, including death resulting from any of these at any time. "Bodily injury" does not include shock, emotional, mental or psychological distress, injury, trauma or anguish, or other similar condition, unless such condition results solely and directly from that one person's prior physical injury, physical sickness or physical disease otherwise covered under this insurance.[1]

\* \* \*

**13**. "Occurrence" means an accident, including continuous or repeated exposure to substantially the same general harmful conditions.

\* \* \*

**18.** "Suit" means a civil proceeding in which damages because of "bodily injury", "property damage" or "personal and advertising injury" to which this insurance applies are alleged. . .

16. The Policy provides Endorsement CG 24 12 11 85, effective 5/22/2020:

THIS ENDORSEMENT CHANGES THE POLICY, PLEASE READ IT CAREFULLY

This endorsement modifies insurance provided under the following:

**COMMERCIAL GENERAL LIABILITY COVERAGE PART SCHEDULE**

**Description of Watercraft:**

PER SCHEDULE OF JET SKIS – ON FILE WITH OUR COMPANY

---

[1] This definition of "bodily injury" is pursuant to "Bodily Injury Redefined Endorsement," as provided on Form AD 08 42 02 16 of the Policy.

**Additional Premium**

INCLUDED

(if no entry appears above, information required to complete this endorsement will be shown in the Declaration as applicable to this endorsement.)

1. Exclusion g. of COVERAGE A (Section 1) does not apply to any watercraft owned or used by or rented to the insured shown in the Schedule.

2. WHO IS AN INSURED (Section II) is amended to include as an insured any person or organization legally responsible for the use of any such watercraft you own, provided the actual use is with your permission.

### **ADMIRAL'S RESERVATION OF RIGHTS LETTER**

17. On or about December 3, 2021, Admiral sent Kabul a Reservation of Rights Letter.

18. The Reservation of Rights Letter notified Kabul that the allegations and the claims in the Lynch Action may not be covered under the Policy.

19. The Reservations of Rights Letter notified Kabul that based on the Complaint in the Lynch Action, Admiral was providing a defense subject to Admiral's reservations of rights.

20. The Reservation of Rights Letter stated, among other things: "Admiral reserves the right to deny coverage to you for the claims made and damages alleged in the *Lynch* Complaint for the reasons set forth herein and subject to Admiral's right, which is reserved, to modify this reservation if new information becomes available warranting a modification."

21. The Reservation of Rights Letter also stated, among other things: "Admiral reserves the right to seek a judicial determination of what coverage, if any, is afforded for you under the Policy for the claims made and damages alleged in the *Lynch* Complaint, including Admiral's obligation to provide a defense."

22. The Reservations of Rights Letter further stated, among other things: "Admiral reserves the right to seek reimbursement from you of its defense costs in the event it is determined that no coverage exists for the claims made and damages alleged in the *Lynch* Lawsuit."

23. Kabul accepted Admiral's defense subject to its Reservation of Rights Letter.

## THE COVERAGE ACTION

24. On January 31, 2022, Admiral filed a Complaint for Declaratory Judgment in the United States District Court, District of Nevada Case No. 2:22-cv-00177 ("Coverage Action") asserting that it had no duty to defend or indemnify Kabul in the Lynch Action pursuant to the Policy.

25. The jet ski rented to Alexander by Kabul that was involved in the incident in the Lynch Action was a 2020 Yamaha PWC number YAMA3877C020, which was registered to Kabul on or about June 25, 2020.

26. On August 14, 2024, the Court in the Coverage Action entered an Order Resolving Pending Motions for Summary Judgment ("Summary Judgment Order"). A true and correct copy of the Summary Judgment Order is attached hereto as **Exhibit "2."**

27. In the Summary Judgment Order, the Court ruled that "Admiral has no duty to defend Kabul in the Lynch Action" because exclusion g. excluded jet skis and the jet ski that was rented to Alexander and was involved in the incident in the Lynch Action was not on any schedule with Admiral to be covered under the Boats Endorsement.

28. The Court also ruled in the Summary Judgment Order that because Admiral has no duty to defend Kabul, it also has no duty to indemnify Kabul in the Lynch Action.

## FIRST CAUSE OF ACTION

### (Unjust Enrichment)

29. Admiral hereby incorporates and realleges the allegations in paragraphs 1 to 28 as if fully set forth herein.

30. The Court in the Coverage Action determined that Admiral did not owe a duty to defend Kabul in the Lynch Action pursuant to the terms of the Policy, and in accordance with prevailing legal authority.

31. Kabul allowed Admiral to pay for attorney's fees and defense costs to defend Kabul in the Lynch Action despite acknowledgement and receipt of Admiral's Reservation of Rights Letter.

32. Admiral paid $62,854.42 in attorney's fee for the defense of Kabul in the Lynch Action.

33. The Court in the Coverage Action determined that Admiral did not owe a duty to

indemnify Kabul in the Lynch Action pursuant to the terms of the Policy, and in accordance with prevailing legal authority.

34. Admiral attended a mediation with Kabul in the Lynch Action.

35. At Kabul's insistence, Admiral paid $850,000 to settle the Lynch Action.

36. Kabul has been unjustly enriched by Admiral's payment of defense fees and costs, and settlement in the Lynch Action against the fundamental principles of justice or equity and good conscious.

**SECOND CAUSE OF ACTION**

**(Equitable Estoppel)**

37. Admiral hereby incorporates and realleges the allegations in paragraphs 1 to 36 as if fully set forth herein.

38. Admiral sent Kabul a Reservation of Rights Letter reserving the right to seek reimbursement for any and all attorney's fees, costs and indemnification payments that Admiral paid in connection with Kabul's defense and indemnification in the Lynch Action.

39. Kaul implicitly accepted the terms and conditions of the reservation of rights letters by continuously allowing Admiral to pay for defense fees and costs and to make a settlement payment in the Lynch Action.

40. Admiral incurred attorney's fees and costs to pay for the defense of Kabul in the Lynch Action.

41. Admiral paid a settlement for Kabul in the Lynch Action.

42. Kabul intended that its conduct would be relied on by Admiral.

43. Admiral relied on Kabul's conduct to its detriment.

**SECOND CAUSE OF ACTION**

**(Equitable Subrogation)**

44. Admiral hereby incorporates and realleges the allegations in paragraphs 1 to 43 as if fully set forth herein.

45. Admiral sent Kabul a Reservation of Rights Letter reserving the right to seek reimbursement for any and all attorney's fees, costs and indemnification payments that Admiral paid

in connection with Kabul's defense and indemnification in the Lynch Action.

46. Kabul implicitly accepted the terms and conditions of the reservation of rights letters by continuously allowing Admiral to pay for defense fees and costs and to make a settlement payment in the Lynch Action.

47. Admiral incurred attorney's fees and costs to pay for the defense of Kabul in the Lynch Action.

48. Admiral paid a settlement for Kabul in the Lynch Action.

49. Kabul has received an unearned windfall at the expense of Admiral.

50. Admiral is entitled to equitable subrogation in the amount of the attorney's fees and costs and settlement payment in connection with the Lynch Action.

## **PRAYER FOR RELIEF**

WHEREFORE, Admiral prays for judgment against Kabul as follows:

1. For judgment declaring that Kabul was unjustly enriched by the defense fees and costs incurred by and the settlement payment made by Admiral on behalf of Kabul in the Lynch Action;

2. For judgment declaring that Kabul is equitably estopped from failing to reimburse Admiral for the defense fees and costs, and settlement payment made by Admiral on behalf of Kabul in the Lynch Action;

3. For judgment declaring that Admiral is entitled to Equitable Subrogation to recover the defense fees and costs, and settlement payment made by Admiral on behalf of Kabul in the Lynch Action;

/ / /

/ / /

/ / /

/ / /

4. For costs of suit incurred herein; and

5. For such other further relief as this Court may deem just and proper.

Dated: November 4, 2024

ARMSTRONG TEASDALE LLP

By: /s/ *Tracy A. DiFillippo*
KEVIN R. STOLWORTHY, ESQ.
Nevada Bar No. 2798
TRACY A. DIFILLIPPO, ESQ.
Nevada Bar No. 7676
7160 Rafael Rivera Way, Suite 320
Las Vegas, Nevada 89113

*Attorneys for Plaintiff*
*Admiral Insurance Company*