UNITED STATES DISTRICT COURT

DISTRICT OF NEVADA

| | |
|---|---|
| ADMIRAL INSURANCE COMPANY,<br><br>Plaintiff,<br><br>vs.<br><br>KABUL, INC. d/b/a FASTRIP PWC RENTALS, KABUL, INC. d/b/a FASTRIP FOOD STORE,<br><br>Defendants. | Case No.: 2:24-cv-2060-GMN-MDC<br><br>REPORT AND RECOMMENDATION TO DENY MOTION TO DISMISS |

I was referred Defendant's *Motion to Dismiss* (ECF No. 7) per 28 U.S.C. § 636. For the reasons below, I RECOMMEND the Motion be **DENIED.**

**DISCUSSION**

I.  **BACKGROUND**

This is one of several actions filed and maintained in this Court arising out of an August 21, 2020, jet ski accident on the Colorado River that resulted in the death of Tammy Lynch ("Lynch"). Lynch was passenger on a jet ski driven by Darryl Alexander ("Alexander") that had been rented from defendant Kabul, Inc. ("Kabul"). Lynch was fatally injured when their jet ski was struck by another watercraft operated by Samir Adrian Hernandez ("Hernandez").

The first action filed in this Court was on October 21, 2021, by the heirs and estate of Lynch, Case No. 2:21-cv-01981-ART-DJA (the "Lynch Action"), against Hernandez, Kabul, and other defendants. Kabul answered the Lynch plaintiffs' complaint on December 22, 2021 (2:21-cv-01981-ART-DJA at ECF No. 5). Kabul did not dispute this Court's personal or subject matter jurisdiction but rather admitted jurisdiction was proper in this Court. *Id.* at p. 5. In response to the Lynch Action, Kabul filed an insurance claim with Admiral Insurance Company ("Admiral") (the plaintiff here) for, *inter alia,* coverage and defense against the claims asserted by the Lynch plaintiffs under a commercial

1

1  insurance policy ("Policy") issued by Admiral to Kabul. *See Admiral Opp'n to Motion To Dismiss, ECF No. 18 at 3-4*. Admiral disputed coverage and provided Kabul with a reservation of rights letter ("Reservation Letter"). The Reservation Letter advised Kabul that the claims in the Lynch Action may not be covered under the Policy and that Admiral would defend Kabul subject to Admiral's reservations of rights. *Id*. Kabul accepted Admiral's defense subject to Admiral's Reservation Letter. *Id*. Admiral eventually paid $62,854.42 in attorney's fees to defend Kabul in the Lynch Action and $850,000.00 settle the Lynch Action on behalf of Kabul. *Complaint, ECF No. 1 at ¶¶32, 35*. The settlement was approved by the Court in the Lynch Action on February 23, 2024. *Lynch Action at ECF No. 100*.

Meantime, Admiral filed the second related action against Kabul (and other defendants) in this Court, Case No. 2:22-cv-00177-CDS-NJK ("Declaratory Action"). Admiral asserted two claims against Kabul seeking declarations that Admiral has no duty to defend and indemnify Kabul in the Lynch Action under the Policy. Kabul answered Admiral's complaint and, again, did not challenge the Court's personal jurisdiction but instead affirmatively acknowledged the Court's personal jurisdiction and asserted third-party claims against Gregg Eidsness Farm Bureau Financial Services, the insurance agent relative to the Policy. *Declaratory Action at ECF No. 14*.

On August 14, 2024, the District Judge granted Admiral summary judgment on its claims against Kabul and declared that Admiral had not duty to defend Kabul in the Lynch Action and no duty to indemnity Kabul. *Declaratory Action at ECF No. 147*. Based on that judgment in the Declaratory Action, Admiral then commenced this third action (the "Reimbursement Action") against Kabul in this Court seeking reimbursement of the defense fees and settlement payment Admiral paid on behalf of Kabul in the Lynch Action. *ECF No. 1*.

This time Kabul did not answer but instead filed the instant *Motion to Dismiss* (ECF No. 7). Despite having litigated two related actions over three years in this Court and district, Kabul argues for the first time in its Motion to Dismiss that this Court lacks personal and admiralty jurisdiction, and that venue is improper in this district. *ECF No. 7*. Kabul also moves to dismiss Admiral's Reimbursement

Action complaint for failure to state a claim under Rule 12(b)(6); insufficient service of process; and failure to join indispensable party.

For the reasons below, I recommend denying Kabul's Motion to Dismiss.

## II. ANALYSIS

### A. THE COURT HAS PERSONAL JURISDICTION OVER DEFENDANT

Federal Rule of Civil Procedure 12(b)(2) permits a defendant, by way of motion, to assert the defense that a court lacks personal jurisdiction over a defendant. Fed. R. Civ. P. 12(b)(2). The party asserting the existence of jurisdiction bears the burden of establishing it. *See Mattel, Inc. v. Greiner & Hausser GmbH*, 354 F.3d 857, 862 (9th Cir. 2003). When a Rule 12(b)(2) motion is based on written materials, rather than an evidentiary hearing, a "plaintiff need make only a prima facie showing of jurisdictional facts to withstand the motion to dismiss." *Ballard v. Savage*, 65 F.3d 1495, 1498 (9th Cir. 1995). "This prima facie standard 'is not toothless,' however; [plaintiff] 'cannot simply rest on the bare allegations of its complaint.'" *AMA Multimedia, LLC v. Wanat*, 970 F.3d 1201, 1207 (9th Cir. 2020)(quoting *In re Boon Glob. Ltd.*, 923 F.3d 643, 650 (9th Cir. 2019)).

In assessing whether personal jurisdiction exists, a court may consider evidence presented in affidavits or order discovery on jurisdictional issues. *Data Disc, Inc. v. Sys. Tech. Assoc., Inc.*, 557 F.2d 1280, 1285 (9th Cir. 1977). When no federal statute applies to the determination of personal jurisdiction, the law of the state in which the district court sits applies. *Schwarzenegger v. Fred Martin Motor Co.*, 374 F.3d 797, 800 (9th Cir. 2004). Because Nevada's long-arm statute reaches the outer limits of federal constitutional due process, courts in Nevada need only assess constitutional principles of due process when determining personal jurisdiction. *See* NRS 14.065; *Galatz v. Eighth Jud. Dist. Ct.*, 683 P.2d 26, 28 (Nev. 1984). Due process requires that a non-resident defendant have minimum contacts with the forum state such that the "maintenance of the suit does not offend 'traditional notions of fair play and substantial justice.'" *Int'l Shoe Co. v. Washington*, 326 U.S. 310, 316 (1945) (*quoting Milliken v. Meyer*, 311 U.S. 457, 463 (1940)).

Minimum contacts may give rise to either general jurisdiction or specific jurisdiction. *LSI Indus., Inc. v. Hubbell Lighting, Inc.*, 232 F.3d 1369, 1375 (Fed. Cir. 2000). General jurisdiction exists where a defendant maintains "continuous and systematic" ties with the forum state, even if those ties are unrelated to the cause of action. Id. (citing *Helicopteros Nacionales de Colombia, S.A. v. Hall*, 466 U.S. 408, 414–16 (1984)). Specific jurisdiction exists where claims "arise[ ] out of" or "relate[ ] to" the contacts with the forum, even if those contacts are "isolated and sporadic." *Id*.

Defendant argues that plaintiff did not allege sufficient minimum contacts by defendant to confer this Court with personal jurisdiction over defendant. *Motion, ECF No. 7 at p. 10.*  I find that plaintiff sufficiently alleged defendant's minimum contacts with Nevada to confer this Court with personal jurisdiction over defendant.   Plaintiff's reimbursement claims against defendant here arise from defendant's activities in this district.

Among other jurisdictional facts, plaintiff Admiral alleges that (a) defendant was sued in this district by the heirs and estate of Lynch in Lynch Action; (b) Admiral paid Kabul's attorneys' fees incurred in the Lynch Action; (c) Admiral paid the Lynch plaintiffs $850,000.00 to settle their claims against Kabul in the Lynch Action; (d) Kabul participated in the Declaratory Action; and that (e) this Court determined that Admiral did not have a duty to indemnify or defend Kabul in the Lynch Action. *See Complaint, ECF No. 1 at ¶¶3, 24-28, 30-33, 35, 39-43, 46-50.*  In sum, Admiral has alleged sufficient facts establishing that its claims for reimbursement from Kabul for payment of the Kabul's attorneys' fees and settlement of the Lynch Action arise out of Kabul's forum-related activities.

Moreover, Kabul not only affirmatively acknowledged the Court's personal jurisdiction in the Declaratory Action but affirmatively availed itself of the Court's jurisdiction by asserting third-party claims against the insurance agent relative to the Policy, Gregg Eidsness Farm Bureau Financial Services, which arose out of the same underlying occurrence. *Declaratory Action at ECF No. 14. See Hernandez v. Wells Fargo Home Mortg.*, 2016 WL 183478, at *2 (D. Nev. Jan. 14, 2016) (the Court may "take judicial notice of matters of public record" when considering a motion to dismiss) (*quoting*

*Mack v. South Bay Beer Distrib.,* 798 F.2d 1279, 1282 (9th Cir. 1986)); *Kasey v. Molybdenum Corp. of America,* 336 F.2d 560, 563 (9th Cir.1964)(among other things, a court may take judicial notice of its own records in other cases). "[T]here is nothing unfair, or violative of due process, about requiring a party that has affirmatively sought the aid of our courts with regard to a particular transaction to submit to jurisdiction in the same forum as a defendant with regard to the same transaction with the same party." *Dow Chem. Co. v. Calderon,* 422 F.3d 827, 835 (9th Cir. 2005). Thus, "personal jurisdiction exists where a defendant also independently seeks affirmative relief in a separate action before the same court concerning the same transaction or occurrence." *Id.* at 834. (*citing Gen. Contracting & Trading Co., LLC v. Interpole, Inc.,* 940 F.2d 20, 22 (1st Cir. 1991) and *Int'l Transactions, Ltd. v. Embotelladora Agral Regionmontana SA de CV*, 277 F. Supp. 2d 654, 657 (N.D. Tex. 2002)).

**B.   THE COURT HAS SUBJECT MATTER JURISDICTION AND VENUE IS PROPER IN THIS DISTRICT**

28 U.S.C. § 1333 grants federal district courts original jurisdiction over "any civil case of admiralty or maritime jurisdiction." *Id.* Among other things, contracts related to water vessels or to commerce on navigable waters are subject to maritime jurisdiction. *See Aqua-Marine Constructors, Inc. v. Banks*, 110 F.3d 663, 670–71 (9th Cir. 1997). Thus, "[i]nsurance on vessels is clearly within [admiralty] jurisdiction." *Royal Ins. Co. of Am. v. Pier 39 Ltd. P'ship*, 738 F.2d 1035, 1037 (9th Cir. 1984). Admiralty jurisdiction also extends to "quasi-contractual claims that arise out of maritime contracts or other inherently maritime transactions." *Santova Logistics, Ltd. v. Castello 1935, Inc*., 2012 WL 4408733, at *3 (W.D. Va. June 19, 2012) (q*uoting Barna Conshipping, S.L. v. 2,000 Metric Tons, More or Less, of Abandoned Steel*, 410 F. App'x 716, 422 (4th Cir.2011) (per curiam). I find the Policy is a maritime contract.

The Policy has an endorsement for "Boats" and provides coverage for watercraft owned or used by or rented" by Kabul, specifically including Jet Ski Rentals. Thus, I find subject matter jurisdiction over Admirals quasi-contract claims because they emanate from the Policy. *See Aqua-Marine*

*Constructors, Inc.* 110 F.3d at 670–71; *Santova Logistics, Ltd.*, 2012 WL 4408733, at *3. Moreover, Kabul has expressly admitted that this Court has admiralty jurisdiction because the Policy concerns watercraft used in commerce on navigable waters. In the Declaratory Action, Kabul admitted that:

> "11.   The Court has admiralty jurisdiction pursuant to 28 U.S.C. § 1331 because the Policy insured certain of Kabul's watercraft that it rented to customers to be used on the Colorado River and the issue herein is whether the Policy provides coverage for the watercraft at issue…."

*See Declaratory Action at ECF No. 1, ¶11 (Admiral's Complaint) and ECF No. 14 at ¶11* ("Answering Paragraph 11 of the Complaint, Defendant admits the allegations in the paragraph."). "On a motion to dismiss, a court may also take judicial notice of 'matters of public record.'" *Hernandez*, 2016 WL 183478, at *2 (*citing Mack,* 798 F.2d at 1282); *Kasey,* 336 F.2d at 563 (a court may take judicial notice of its own records in other cases).

Kabul's argument that venue is improper is this district is unsupported and similarly misplaced. Kabul argues that venue is improper in this District because all of its assets are in Arizona, both parties are citizens of Arizona, some witnesses are in Arizona, and the Policy at issue was entered into in Arizona. *ECF No. 7 at 11.* While Kabul makes such factual arguments, it offers no legal authorities to show that such factual circumstances establish improper venue in this district. *See LR 7-2(d)* ("The failure of a moving party to file points and authorities in support of the motion constitutes a consent to the denial of the motion."). More importantly, like Kabul's challenges to the Court's personal and subject matter jurisdiction, Kabul's argument is contradicted by its prior admission that the venue regarding disputes over the Policy and the related Lynch incident is proper in this district. Again, in the Declaratory Action Kabul also admitted that:

> 12.   The District of Nevada is the proper venue under 28 U.S.C. § 1391 because the Lynch Suit was filed in the U.S. District of Nevada and alleges that the Incident occurred within the boundaries of the District of Nevada, which gives rise to the claim for defense and indemnity under the Policy.

*See Declaratory Action at ECF No. 1, ¶12 (Admiral's Complaint) and ECF No. 14 at ¶11* ("Answering Paragraph 12 of the Complaint, Defendant admits the allegations in the paragraph."). *See Hernandez, 2016 WL 183478, at *2; Kasey,* 336 F.2d at 563. .

Therefore, I find subject matter jurisdiction over Admiral's claims and that venue is proper in this district.

### C. ADMIRAL HAS SUFFICENTLY STATED EQUITABLE CLAIMS AGAINST KABUL

Dismissal is appropriate under Fed. R. Civ. P. 12(b)(6) where a pleader fails to state a claim upon which relief can be granted. *Id.*; *Bell Atl. Corp. v. Twombly*, 550 U.S. 544, 555 (2007). A pleading must give fair notice of a legally cognizable claim and the grounds on which it rests, and although a court must take all factual allegations as true, legal conclusions couched as factual allegations are insufficient. *Twombly*, 550 U.S. at 555. Accordingly, Rule 12(b)(6) requires "more than labels and conclusions, and a formulaic recitation of the elements of a cause of action will not do." *Id*. "To survive a motion to dismiss, a complaint must contain sufficient factual matter, accepted as true, to 'state a claim to relief that is plausible on its face.'" *Ashcroft v. Iqbal,* 556 U.S. 662, 678 (2009) (*quoting Twombly*, 550 U.S. at 570). A court, however, may not dismiss a complaint for failure to state a claim "unless it appears beyond doubt that the plaintiff can prove no set of facts in support of his claims which would entitle him to relief." *Barnett v. Centoni,* 31 F.3d 813, 813 (9th Cir. 1994) (citing *Buckey v. Los Angeles*, 957 F.2d 652, 654 (9th Cir.1992)).

"All allegations of material fact are taken as true and construed in the light most favorable to the non-moving party." *Smith v. Jackson*, 84 F.3d 1213, 1217 (9th Cir.1996); *see Miree v. DeKalb County*, 433 U.S. 25, 27 n. 2, 97 S. Ct. 2490, 53 L. Ed. 2d 557 (1977). Furthermore, courts must assume that all general allegations "embrace whatever specific facts might be necessary to support them." *Peloza v. Capistrano Unified Sch. Dist*., 37 F.3d 517, 521 (9th Cir.1994), *cert. denied*, 515 U.S. 1173, 115 S. Ct. 2640, 132 L. Ed. 2d 878 (1995) (citations omitted). However, "conclusory allegations of law and unwarranted inferences are not sufficient to defeat a motion to dismiss." *Pareto v. F.D.I.C.,* 139 F.3d

696, 699 (9th Cir.1998). Kabul asserts that Admiral failed to state claim for several reasons, which I find unpersuasive.

First, Kabul argues that Admiral's equitable claims are barred under Arizona law by the existence of the Policy. In maritime jurisdiction cases, a federal court sitting in admiralty must apply federal maritime choice-of-law rules. *Aqua-Marine Constructors, Inc. v. Banks*, 110 F.3d 663, 670 (9th Cir. 1997)(citations omitted). Admiral argues that Nevada law applies. In determining which law applies as between Nevada and Arizona – the two isolated eligible states for consideration - "the court then must determine which state has the greatest interest in the resolution of the issues." *Id.* at 673 (internal quotations and citation omitted). In making such determination, the Ninth Circuit looks to the Restatement (Second) of Conflict of Laws. *See id.* at 674 (applying the Restatement (Second) of Conflict of Laws §188(1) (1971) to the contract claims at issue in that admiralty jurisdiction matter); *see also Casun Inv., A.G. v. Ponder,* 119 F.4th 637, 645 (9th Cir. 2024), *cert. denied sub nom. NVWS PROP., LLC v. Casun Inv., A.G.,* No. 24-876, 2025 WL 1151255 (U.S. Apr. 21, 2025) (Ninth Circuit also applies the Restatement (Second) of Conflict of Laws in diversity jurisdiction).

In this case, the claims at issue are equitable and I find that Restatement (Second) of Conflict of Laws §221, which concerns unjust enrichment and restitution, is most applicable to Admiral's equitable claims here. *See Casun Inv., A.G.,* 119 F.4th at 645 ("We see no section more applicable than Section 221 to an unjust enrichment claim…."). In determining which state has the most significant relationship under Section 221, courts consider:

> (a) the place where a relationship between the parties was centered, provided that the receipt of enrichment was substantially related to the relationship,
> (b) the place where the benefit or enrichment was received,
> (c) the place where the act conferring the benefit or enrichment was done,
> (d) the domicil[e], residence, nationality, place of incorporation and place of business of the parties, and
> (e) the place where a physical thing, such as land or a chattel, which was substantially related to the enrichment, was situated at the time of the enrichment.

8

>These contacts are to be evaluated according to their relative importance with respect to the particular issue.

*Id.* § 221(2); *see also Casun Inv., A.G.,* 119 F.4th at 645.

Considering these elements, I am persuaded that Nevada has the greatest interest in the resolution of the issues. Admiral's claims arose in Nevada and, as to those claims, the relationship between Admiral and Kabul was centered in Nevada. Admiral's equitable claims here arise from the judgment Admiral obtained in the Declaratory Action – occurring in Nevada - which declared that Admiral did not have a duty to defend or indemnify Kabul in the Lynch Action - which also occurred in Nevada.

Nevada is also the place where the benefit or enrichment at issue was conferred by Admiral and received by Kabul. Admiral alleges it paid 62,854.42 in attorney's fees to Nevada counsel for the defense of Kabul in the Lynch Action, which occurred in Nevada. *See* ECF No. 1 at ¶31; ECF No. 18 at 7. Admiral further alleges that it paid $850,000 to settle the Lynch Action (Nevada) at Kabul's insistence. *See* ECF No. 1 at ¶35; ECF No. 18 at 7. The last element regarding the location of the physical thing substantially related to the enrichment is not applicable here. The only element favorable to Kabul is that Kabul a citizen of Arizona. ECF No. 7 at 17. In sum, the Section 221 elements manifest that Nevada has the greatest interest in the resolution of the issues and therefore Nevada law applies.

Admiral's equitable claims are not foreclosed by the existence of the Policy under Nevada law. Foremost, Admiral's equitable claims are for reimbursement of the settlement paid to Lynch and fees and costs it paid to defend Kabul in the Lynch Action. Admiral is not seeking such reimbursements pursuant the Policy; the Policy does not have provisions covering such reimbursements. Kabul does not identify any provisions in the Policy providing for the reimbursements sought by Admiral's claims. In fact, Kabul expressly argues that the Policy does not provide for the relief sought by Admiral. *ECF No. 7 at 14*. Under Nevada law, a party may pursue equitable claims for matters that are not covered by, or

enforced through, a written agreement. *See Nautilus Ins. Co. v. Access Med., LLC*, 482 P.3d 683, 688 (Nev. 2021) (insurance plaintiff may assert equitable claims for reimbursement for fees and costs incurred in defending insured after insurance plaintiff obtained declaratory judgment that it had no duty to defendant insured under policy because the insurance policy did not apply).[1]

Second, Kabul argues that Admiral cannot state its equitable claims because it did not allege clean hands. ECF No. 7 at 13. Kabul, however, does not offer any authority to support its conclusory argument. Pursuant to LR 7-2(d), "[t]he failure of a moving party to file points and authorities in support of the motion constitutes a consent to the denial of the motion." Moreover, clean hands is an affirmative defense that must be specifically pled by Kabul (*see Yount v. Criswell Radovan,* 469 P.3d 167, 174 (Nev. 2020)) and not a requisite allegation to any of Admiral's three claims, (i) unjust enrichment; (ii) equitable estoppel; and (iii) equitable subrogation, require a litigant to allege clean hands as an element of the claims (*see Certified Fire Prot. Inc. v. Precision Constr.*, 283 P.3d 250, 257 (Nev. 2012) (unjust enrichment); *Las Vegas Convention & Visitors Auth. v. Miller*, 191 P.3d 1138, 1157 (Nev. 2008) (equitable estoppel); *In re Hamada*, 291 F.3d 645, 649 (9th Cir. 2002) (equitable subrogation).

Third, Kabul argues that Admiral's equitable claims are barred because Admiral failed to assert them in the Declaratory Action. ECF No. 7 at 15. Litigants cannot split their claims and "maintain two separate actions regarding the same subject matter at the same time in the same court and against the same defendant." *Mendoza v. Amalgamated Transit Union Int'l*, 30 F.4th 879, 886 (9th Cir. 2022) To determine whether improper claim-splitting has occurred, courts consider whether the second suit involves "(1) the same causes of action as the first; and (2) the same parties or their privies." *Id.* Kabul and Admiral were involved in the Declaratory Action, but the causes of action are not the same.

---

[1] The same is true under Arizona law. *See Ruck Corp. v. Woudenberg,* 611 P.2d 106, 109 (Ariz. Ct. App. 1980)(a party may recover in *quantum meriut* when remedy is not available under a written agreement, such as when an agreement is unenforceable because a condition precedent was never fulfilled).

In making such consideration, I have analyzed the following elements to whether the causes of action here are the same as in the Declaratory Action: "(1) whether rights or interests established in the prior judgment would be destroyed or impaired by prosecution of the second action; (2) whether substantially the same evidence is presented in the two actions; (3) whether the two suits involve infringement of the same right; and (4) whether the two suits arise out of the same transactional nucleus of facts." *Costantini v. Trans World Airlines*, 681 F.2d 1199, 1202 (9th Cir. 1982).

The Declaratory Action involved a singular claim for declaratory judgment that Admiral did not have a duty to defend or indemnify Kabul in the Lynch Action. Admiral's claims here are not the same. In this case, Admiral's claims are whether Kabul should reimburse Admiral for: (a) the attorneys' fees and costs Admiral paid Kabul's attorneys to defend Kabul in the Lynch Action; and (b) the settlement paid to the Lynch plaintiffs on behalf of Kabul. The only relationship between the Declaratory Action and this action is that the Declaratory Action already determined that Admiral had no duty to defend and pay Kabul's attorneys' fees and costs or to indemnify Kabul by paying the settlement to the Lynch plaintiffs on behalf of Kabul. The issues here are whether Admiral can recover such fees, costs, and settlement from Kabul under equitable and quasi contract principles.

By its December 2, 2021, reservation letter ("Reservation Letter") to Kabul, Admiral expressly advised Kabul that it would seek to recover such items if Admiral ultimately obtained a determination that it had no obligation to confer such benefits, *i.e.,* obtain a favorable judgment in the Declaratory Action. *ECF No. 1 at ¶¶17-23*. Admiral thus, advised Kabul and reserved for itself, the right to seek reimbursement from Kabul *after* a determination of whether Admiral had an obligation to defend and indemnify Kabul occurred. The Nevada Supreme Court has observed the unique circumstances of disputes regarding insurance coverage, and implicitly recognized that an insurance company may bring separate equitable claims for reimbursement after a determination has been made that the insurer never had a duty to defend or indemnify:

11

> When time is precious, it makes sense for the parties to decide quickly what to do, and to litigate later who must pay. Because an insurer risks unbounded liability if it loses the coverage dispute after refusing to defend a suit, it is generally reasonable [for the insurer] to accede to the demand rather than to insist on an immediate test of the disputed obligation…. Under these circumstances, we conclude that when a court determines that the insurer never had a duty to defend, and the insurer clearly and expressly reserved its right to seek reimbursement, it is equitable to require the policyholder to pay. Therefore, we hold that when a court finally determines that the insurer had no contractual duty to defend, the insurer may ordinarily recover in restitution if it has clearly reserved its right to do so in writing.

*Nautilus Ins. Co. v. Access Med., LLC,* 137 Nev. 96, 102, 482 P.3d 683, 689 (Nev. 2021) (internal citations and quotations omitted).

Accordingly, I find that Admiral's equitable claims are not barred because Admiral did not assert them in the Declaratory Action.

Finally, Kabul argues on the one hand that Admiral's claims are barred because the Policy obligates Admiral to pursue its indemnity claim against Alexander or Hernandez. *ECF No. 7 at 14.* On the other hand, Kabul argues that "Admiral fails to allege the insurance contract allows for reimbursement of voluntary payments Admiral may make." *Id. at 14:18-19.* It is not necessary to resolve these seeming contradictions because Admiral's claims are not based on the Policy or equitable benefits conferred on Alexander or Hernandez. Admiral's claims are in equity and quasi-contract and arise out of benefits it conferred on Kabul. *See ECF No. 1 at ¶¶31, 32, 35, 39, 40, 41, 42, 43, 47, 48, 49.* Additionally, the nature and context of Admiral's claims operate as between an insurer and insured. *See e.g., Capitol Indem. Corp. v. Blazer*, 51 F. Supp. 2d 1080, 1090 (D. Nev. 1999)("The right to reimbursement does not arise unless there is an understanding between the parties that the insured would be required to reimburse the insurer for monies expended in providing a defense.").

That is precisely the context of Admiral's claims. Admiral's claims are founded on the Reservation Letter to Kabul, by which Kabul is alleged to have accepted Admiral's benefits and reimburse Admiral if it was ultimately determined that Admiral had no duty to confer such benefits to Kabul. *See ECF No. 1 at ¶¶17-22.* An insurer has a right to reimbursement from an insured where

there is an agreement between the parties that the insured reserved the right to reimbursement. *See Capitol Indem. Corp.,* 51 F. Supp. 2d at 1090. These are the circumstances here where Admiral's claims are based and bolstered by its Reservation Letter to Kabul and asserted after a determination that Admiral never owed indemnification or defense duties to Kabul.

> When a court determines that an insurer never owed a duty to defend, the insurer expressly reserved its right to seek reimbursement in writing after defense was tendered, and the policyholder accepted the defense from the insurer, then the insurer is entitled to that reimbursement. Under generally applicable principles of unjust enrichment and restitution, the insurer has conferred a benefit on the policyholder; the policyholder appreciated the benefit; and, because it is reasonable for the insurer to accede to the policyholder's demand, it is equitable to require the policyholder to pay."

*Nautilus Ins. Co.,* 137 Nev. at 105, 482 P.3d at 691–92.

### D. ALL NECESSARY PARTIES ARE PRESENT AND KABUL'S SERVICE OF PROCESS OBJECTION IS OVERRULED

Kabul vaguely and broadly argues that all of the other parties in the related actions should be joined. *ECF No. 7 at 12.* Kabul does not show how the absence of any one of them would prevent the Court from fully resolving the issues in the case or would lead to an unfair or incomplete adjudication. Kabul's argument is bereft of analysis or points and authorities. "The failure of a moving party to file points and authorities in support of the motion constitutes a consent to the denial of the motion." *LR 7-2(d).* As discussed above, Admiral's claims arise out of benefits it conferred only Kabul, which Kabul is alleged to have agreed to reimburse Admiral per the Reservation Letter if it was later determined that Admiral owed Kabul no defense or indemnification duties. Such judgment was made in the Declaratory Action and the only issue in this case is whether Kabul must reimburse Admiral. Kabul fails to show how any of the other parties or their circumstances that Kabul utters in its motion have any relevance to Admiral's claims here.

Kabul's service of process objection is similarly anemic. In a single, conclusory, and ambiguous sentence, Kabul seeks dismissal because "service on a person who was not authorized to receive service

on behalf of Kabul, Inc., is ineffective and should be stricken." *ECF No. 7 at 12:1-2*. Kabul does not offer even minimum, necessary details (in its Motion or Reply) such as person's identity or why such person was not authorized to accept service on behalf of Kabul. *ECF Nos. 7 at 12:1-2 and 22:2-6*. Kabul also fails to cite any points and authorities. *Id.*[2] Accordingly, I apply LR 7-2(d) and conclude that Kabul consents to the denial of its motion on this ground and overrule its service objection.

### III.  CONCLUSION AND RECOMMENDATION

For the foregoing reasons,

**I RECOMMEND that:** Defendant's Motion to Dismiss (ECF No. 7) be DENIED.

DATED: May 8, 2025.

IT IS SO RECOMMENDED.

_____
Hon. Maximiliano D. Couvillier III
United States Magistrate Judge

### NOTICE

Pursuant to Local Rules IB 3-1 and IB 3-2, a party may object to orders and reports and recommendations issued by the magistrate judge. Objections must be in writing and filed with the Clerk of the Court within fourteen days. LR IB 3-1, 3-2. The Supreme Court has held that the courts of appeal may determine that an appeal has been waived due to the failure to file objections within the specified time. *Thomas v. Arn*, 474 U.S. 140, 142 (1985).

---

[2] Kabul attached what appears to be unedited drafts of briefs and a declaration, and research notes. *ECF No. 22 at pp. 11-39*. Such attachment do not satisfy Kabul's burden as the moving party or under LR 7-2(d). "[I]t is not the responsibility of the judiciary to sift through scattered papers in order to manufacture arguments for the parties." *MST Mgmt., LLC v. Chicago Doughnut Franchise Co., LLC*, 2021 WL 7907621, at *2 (D. Nev. Dec. 7, 2021)(citations omitted). "Judges are not like pigs, hunting for truffles buried in briefs." *United States v. Dunkel*, 927 F.2d 955, 956 (7th Cir. 1991).

This circuit has also held that (1) failure to file objections within the specified time and (2) failure to properly address and brief the objectionable issues waives the right to appeal the District Court's order and/or appeal factual issues from the order of the District Court. *Martinez v. Ylst*, 951 F.2d 1153, 1157 (9th Cir. 1991); *Britt v. Simi Valley United Sch. Dist.*, 708 F.2d 452, 454 (9th Cir. 1983). Pursuant to LR IA 3-1, the plaintiff must immediately file written notification with the court of any change of address. The notification must include proof of service upon each opposing party's attorney, or upon the opposing party if the party is unrepresented by counsel. Failure to comply with this rule may result in dismissal of the action.