**UNITED STATES DISTRICT COURT**

**DISTRICT OF NEVADA**

ADMIRAL INSURANCE COMPANY,

                Plaintiff,

    vs.

KABUL, INC., *et al.*,

                Defendants.

Case No.: 2:24-cv-02060-GMN-MDC

**ORDER**

Pending before the Court are the Motions to Dismiss Counterclaim, (ECF Nos. 48, 49),[1] filed by Plaintiff/Counter-Defendant Admiral Insurance Company.  Defendants/Counter-Claimants Kabul, Inc. d/b/a Fastrip PWC Rentals and Kabul, Inc. d/b/a Fastrip Food Store (collectively, "Kabul"), filed Responses, (ECF Nos. 79, 80),[2] to which Admiral filed a consolidated Reply, (ECF No. 99).  Next pending before the Court is Admiral's Request for Judicial Notice, (ECF No. 50).[3]  Kabul filed a Response, (ECF No. 81), to which Admiral replied, (ECF No. 100).  Further pending before the Court is the Motion to Dismiss Third-Party Claims, (ECF No. 62), filed by Third-Party Defendant LocalEdge Insurance Agency, Inc. (formerly known as NBS Insurance Agency, Inc. and sued as NBS Insurance Agency, Inc. aka

---

[1] ECF Nos. 48 and 49 are identical.  The motions seek relief under both Federal Rule of Civil Procedure 12(b)(6) and Nevada Revised Statute ("NRS") 41.635, *et seq.*, and were thus filed twice pursuant to LR IC 2-2(b).

[2] Kabul filed a Response, (ECF No. 79), responding to Admiral's arguments under NRS 41.635, and a separate Response, (ECF No. 80), responding to Admiral's arguments under FRCP 12(b)(6).

[3] Admiral requests that the Court take judicial notice of several matters of public record, including publicly filed documents and pleadings filed in a related case, and documents referenced directly or indirectly in Kabul's Counterclaim/Third-Party Complaint.  However, for purposes of this Order, the Court need only take judicial notice of the Summary Judgment Order, Judgment, and Notice of Appeal in Case No. 2:22-cv-00177-CDS-NJK.  *See Interstate Nat. Gas Co. v. S. California Gas Co.*, 209 F.2d 380, 385 (9th Cir. 1953) (explaining Courts may may take judicial notice of matters of public record, including publicly recorded documents).

Nationwide Brokerage Solutions or "Nationwide").[4] Kabul filed a Response, (ECF No. 83), to which Nationwide replied, (ECF No. 87). Next pending before the Court is the Motion to Dismiss Third-Party Claims, (ECF No. 78), filed by Third-Party Defendant Armstrong Teasdale, LLP and Kevin Stolworthy, (collectively "AT"). Kabul filed a Response, (ECF No. 94), to which AT replied, (ECF No. 97). Further pending before the Court is the Motion for Leave to Exceed Page Limitations, (ECF No. 89), filed by Third-Party Defendants RT Specialty and RSG Specialty, LLC (collectively "RSG"). No responses were filed and the time to do so has passed. Next pending before the Court is the Motion to Dismiss Third-Party Claims, (ECF No. 90), filed by RSG. Kabul filed a Response, (ECF No. 107), to which RSG replied, (ECF No. 113). Further pending before the Court is the Motion to Dismiss Third-Party Claims, (ECF No. 91), filed by Third-Party Defendant Ryan Specialty, LLC.[5] Kabul filed a Response, (ECF No. 108), to which Ryan Specialty replied, (ECF No. 112). Lastly pending before the Court is the Motion to Dismiss Third-Party Claims, (ECF No. 117), filed by Third-Party Defendant Gregg Eidsness Farm Bureau Financial Services ("Eidsness"). Kabul filed a Response, (ECF No. 122), to which Eidsness replied, (ECF No. 123).

For the reasons discussed below the Court DENIES without prejudice Admiral's NRS 41.635 Motion to Dismiss, (ECF No. 48), GRANTS Admiral's Federal Rule of Civil Procedure 12(b)(6) Motion to Dismiss, (ECF No. 49), GRANTS Nationwide's Motion to Dismiss, (ECF No. 62), GRANTS, in part, AT's Motion to Dismiss, (ECF No. 78), GRANTS RSG's Motion for Leave, (ECF No. 89), GRANTS RSG's Motion to Dismiss, (ECF No. 90), GRANTS Ryan Specialty's Motion to Dismiss, (ECF No. 91), and GRANTS Eidsness's Motion to Dismiss, (ECF No. 117).

---

[4] Defendant LocalEdge informs the Court that it was improperly named and referred to in Kabul's Counterclaim/Third-Party Complaint as "Nationwide." In its briefing, LocalEdge refers to itself as "Nationwide," in order to avoid confusion. Because of this, the Court will likewise refer to LocalEdge as "Nationwide."

[5] Ryan Specialty also joins RSG's Motion to Dismiss. (*See* Ryan Specialty Mot. Dismiss 2:5, ECF No. 91).

## I.    BACKGROUND

This action arises out of two previous lawsuits related to an August 2020 jet ski accident on the Colorado River that resulted in the death of Tammy Lynch. (*See generally* Compl., ECF No. 1); (*See generally* Ans. & Counter/Cross/Third Party Claims ("Counterclaim/Third-Party Complaint"), ECF No. 33).  Lynch was the passenger on a jet ski driven by Darryl Alexander that had been rented from Kabul. (Counterclaim/Third-Party Complaint ¶ 14).  Lynch was fatally injured when their jet ski was struck by another watercraft operated by Samir Adrian Hernandez. (*Id.*).  The first action filed in this District was in October 2021, by the heirs and estate of Lynch, Case No. 2:21-cv-01981-ART-DJA (the "Lynch Action"), against Hernandez, Kabul, and others.

In response to the Lynch Action, Kabul filed an insurance claim with Admiral for coverage and defense against the claims asserted by the Lynch Action plaintiffs under a commercial insurance policy (the "Policy") issued by Admiral to Kabul. (*See* Compl. ¶ 11–19).  Meanwhile, Admiral filed the second related action against Kabul (and others) in this District, Case No. 2:22-cv-00177-CDS-NJK ("Declaratory Action").  Admiral asserted claims against Kabul seeking declarations that Plaintiff has no duty to defend and indemnify Kabul in the Lynch Action under the Policy.

In August 2024, the judge in the Declaratory Action granted Admiral summary judgment on its claims against Kabul and declared that Plaintiff had no duty to defend Kabul in the Lynch Action and no duty to indemnity Kabul. (*See generally* Order, ECF No. 147 in 2:22-cv-00177-CDS-NJK).  Judgment is final in that case.[6]  Admiral then commenced this third

---

[6] Judgment was entered in favor of Admiral in 2:22-cv-00177-CDS-NJK, (ECF No. 188), and Kabul appealed the Judgment, (ECF No. 195).  "[W]hile appeal with proper supersedeas stays execution of the judgment, it does not—until and unless reversed—detract from its decisiveness and finality." *Huron Holding Corp. v. Lincoln Mine Operating Co.*, 312 U.S. 183, 61 S. Ct. 513, 85 L. Ed. 725 (1941).  Accordingly, the Judgment in 2:22-cv-00177-CDS-NJK is final.

action (the "Reimbursement Action") against Kabul in this Court seeking reimbursement of the defense fees and settlement payment Admiral paid on behalf of Kabul in the Lynch Action. (*See generally* Compl.).

In its Counterclaim/Third-Party Complaint, Kabul filed counterclaims against Admiral and cross claims against third-party defendants Eidsness, Nationwide, RT Specialty, RSG Specialty, Ryan Specialty, Erik W. Fox, Wolfe & Wyman LLP, Kevin R. Stolworthy, and Armstrong Teasdale. (*See* Counterclaim/Third-Party Compl., ECF No. 33).  Kabul alleges claims against the parties for their alleged actions during the course of the Lynch Action and Declaratory Action. (*See id*.).

## II.    <u>LEGAL STANDARD</u>

### A.  Federal Rule of Civil Procedure 12(b)(2)

Federal Rule of Civil Procedure ("FRCP") 12(b)(2) permits a defendant, by way of motion, to assert the defense that a court lacks personal jurisdiction over the defendant. Fed. R. Civ. P. 12(b)(2).  When a 12(b)(2) motion is based on written materials, rather than an evidentiary hearing, the plaintiff need only establish a prima facie showing of jurisdictional facts to withstand the motion to dismiss. *Ballard v. Savage*, 65 F.3d 1495, 1498 (9th Cir. 1995). District courts take the uncontroverted allegations in the complaint as true. *Dole Food Co. v. Watts*, 303 F.3d 1104, 1108 (9th Cir. 2002).

When no federal statute applies to the determination of personal jurisdiction, the law of the state in which the district court sits applies. *Schwarzenegger v. Fred Martin Motor Co.*, 374 F.3d 797, 800 (9th Cir. 2004).  Because Nevada's long-arm statute reaches the outer limits of federal constitutional due process, courts in Nevada need only assess constitutional principles of due process when determining personal jurisdiction. *See* Nev. Rev. Stat. 14.065; *Galatz v. Eighth Jud. Dist. Ct.*, 683 P.2d 26, 28 (Nev. 1984).

Due process requires that a non-resident defendant have minimum contacts with the forum such that the "maintenance of the suit does not offend 'traditional notions of fair play and substantial justice.'" *Int'l Shoe Co. v. State of Wash., Off. of Unemployment Comp. & Placement,* 326 U.S. 310, 316 (1945) (*quoting Milliken v. Meyer*, 311 U.S. 457, 463 (1940)). Minimum contacts can give rise to either general or specific jurisdiction. *LSI Indus., Inc. v. Hubbell Lighting, Inc.*, 232 F.3d 1369, 1375 (Fed. Cir. 2000).  General jurisdiction exists where a defendant maintains "continuous and systematic" ties with the forum state, even if those ties are unrelated to the cause of action. *Id.* (citing *Helicopteros Nacionales de Colombia, S.A. v. Hall*, 466 U.S. 408, 414–16 (1984)).  Specific jurisdiction exists where claims "arise out of" or "relate to" the contacts with the forum, even if those contacts are "isolated or sporadic." *Id.*

### B.  Federal Rule of Civil Procedure 12(b)(6)

Dismissal is appropriate under FRCP 12(b)(6) where a pleader fails to state a claim upon which relief can be granted. Fed. R. Civ. P. 12(b)(6); *Bell Atl. Corp. v. Twombly*, 550 U.S. 544, 555 (2007).  A pleading must give fair notice of a legally cognizable claim and the grounds on which it rests, and although a court must take all factual allegations as true, legal conclusions couched as factual allegations are insufficient. *Twombly*, 550 U.S. at 555.  Accordingly, FRCP 12(b)(6) requires "more than labels and conclusions, and a formulaic recitation of the elements of a cause of action will not do." *Id.*  "To survive a motion to dismiss, a complaint must contain sufficient factual matter, accepted as true, to 'state a claim to relief that is plausible on its face.'" *Ashcroft v. Iqbal*, 556 U.S. 662, 678 (2009) (quoting *Twombly*, 550 U.S. at 570).  "A claim has facial plausibility when the plaintiff pleads factual content that allows the court to draw the reasonable inference that the defendant is liable for the misconduct alleged." *Id.*  This standard "asks for more than a sheer possibility that a defendant has acted unlawfully." *Id.*

If the court grants a motion to dismiss, it must then decide whether to grant leave to amend.  The court should "freely give" leave to amend when there is no "undue delay, bad

faith[,] dilatory motive on the part of the movant. . . undue prejudice to the opposing party by virtue of. . . the amendment, [or] futility of the amendment. . . ." Fed. R. Civ. P. 15(a); *Foman v. Davis*, 371 U.S. 178, 182 (1962).  Generally, leave to amend is only denied when it is clear that the deficiencies of the complaint cannot be cured by amendment. *See DeSoto v. Yellow Freight Sys., Inc.*, 957 F.2d 655, 658 (9th Cir. 1992).

## III.    DISCUSSION

The Court addresses Ryan Specialty and RSG's arguments for dismissal under FRCP 12(b)(2) first, before turning to the other moving parties' arguments under FRCP 12(b)(6).[7]

### A.  FRCP 12(b)(2)

In Kabul's Counterclaim/Third-Party Complaint, it asserts crossclaims against three Ryan entities: Ryan Specialty, LLC, RSG Specialty, LLC, and RT Specialty.  RT Specialty is a division of RSG Specialty, LLC. (Ryan Specialty Mot. Dismiss 3:5–6, ECF No. 91).  Ryan Specialty is the parent company of RSG Specialty, LLC. (*Id.* 3:6–7).  Ryan Specialty, LLC, and RSG Specialty, LLC are Delaware Limited Liability Companies, with their primary place of business in Chicago, Illinois. (Martin Decl. ¶¶ 5, 9, Ex. 1 to Ryan Specialty Mot. Dismiss, ECF No. 91-1).  Moreover, RT Specialty is a division of RSG Specialty, LLC, and is therefore part of a Delaware Limited Liability Company with its primary place of business in Chicago, Illinois. (*Id.* ¶ 12).  Ryan Specialty challenges jurisdiction solely for itself as the parent company, (Ryan Specialty Mot. Dismiss 3:7–8), and RSG challenges jurisdiction over RSG Specialty, LLC, and RT Specialty, (RSG Mot. Dismiss, ECF No. 90).

---

[7] In its Responses, Kabul states that the response "is support by an Appendix," (ECF No. 84) and "in the Appendix is other evidence that refutes the allegations made in the Motion." *See, e.g.,* Resp. to Ryan Specialty at n. 1, ECF No. 107).  But Kabul does not cite the appendix in his responses to support its assertions.  The Court reminds Kabul "that the burden of representation lies upon [it], and not upon the Court.  Whether it is the familiar 'pigs hunting for truffles' metaphor or the 'spaghetti approach,' the idea that the Court will not perform the work of representing the parties is clear." *U-Haul Co. of Nevada, Inc. v. Gregory J. Kamer, Ltd.*, Case No. 2:12–CV–00231-KJD, 2013 WL 4505800, at *2 (D. Nev. Aug. 21, 2013); *see* LR 7-2(d).

Ryan Specialty and RSG argue that dismissal is proper because Kabul does not meet its burden to establish personal or general jurisdiction over it.  The Court agrees for the reasons discussed below.

### 1. Specific Jurisdiction

Kabul argues that the Court has specific jurisdiction over Ryan Specialty and RSG. (Resp. to Ryan Specialty 3:3, ECF No. 108); (Resp. to RSG 17:5–7, ECF No. 107).  Specific jurisdiction refers to "jurisdiction based on the relationship between the defendant's forum contacts and plaintiff's claims." *Menken v. Emm*, 503 F.3d 1050, 1057 (9th Cir. 2007). Specific jurisdiction must arise out of "contacts that the 'defendant himself' creates with the forum State" and cannot be established from the conduct of a plaintiff or third parties within the forum. *Walden v. Fiore*, 571 U.S. 277, 284 (2014) (quoting *Burger King Corp. v. Ruzewicz*, 471 U.S. 462, 475 (1985)).

Courts employ a three-prong test to analyze whether the assertion of specific personal jurisdiction in a given forum is proper:

1) The non-resident defendant must [a] purposefully direct his activities or consummate some transaction with the forum or resident thereof; or [b] perform some act by which he purposefully avails himself of the privilege of conducting activities in the forum, thereby invoking the benefits and protection of its laws;

2) the claim must be one which arises out of or relates to the defendant's forum related activities; and

3) the exercise of jurisdiction must comport with fair play and substantial justice, i.e. it must be reasonable.

*Schwarzenegger*, 374 F.3d at 802.

"The plaintiff bears the burden of satisfying the first two prongs of the test." *Id.*  If the plaintiff satisfies the first two prongs, the burden will shift to the defendant to show that

exercising jurisdiction would be unreasonable. *Id.* "If the plaintiff fails to satisfy either of these prongs, personal jurisdiction is not established in the forum state." *Id.*

In evaluating the first prong, the Ninth Circuit typically distinguishes between cases sounding in contract and those sounding in tort. *Id.* In contract actions, the inquiry considers whether a defendant "purposefully avails itself of the privilege of conducting activities or consummates a transaction in the forum, focusing on activities such as delivering goods or executing a contract." *Yahoo! Inc. v. La Ligue Contre Le Racisme Et L'Antisemitisme*, 433 F.3d 1199, 1206 (9th Cir. 2006) (citation modified). In tort cases, the inquiry assesses whether the defendant "purposefully directs his activities at the forum state." *Id.* (citation modified). Because the claims against Ryan Specialty and RSG arise out of tort law, the Court applies the "purposeful direction" test for the first *Schwarzenegger* prong.

The purposeful direction test, based on *Calder v. Jones*, 465 U.S. 783 (1984), requires Kabul to establish that Ryan Specialty and RSG "(1) committed an intentional act, (2) expressly aimed at the forum state, (3) causing harm that the defendant knows is likely to be suffered in the forum state." *Axiom Foods, Inc. v. Acerchem Int'l, Inc.*, 874 F.3d 1064, 1069 (9th Cir. 2017) (quoting *Washington Shoe Co. v. A-Z Sporting Goods Inc.*, 704 F.3d 668, 673 (9th Cir. 2012)). If these elements are met, a court can exercise jurisdiction "even if the defendant never set foot in the forum state." *Burri L. PA v. Skurla*, 35 F.4th 1207, 1213 (9th Cir. 2022). An action may be directed at a forum state even if it occurred elsewhere. *Morrill v. Scott Fin. Corp.*, 873 F.3d 1136, 1142 (9th Cir. 2017).

Kabul states in a conclusory fashion that Ryan Specialty, through its Nevada-registered subsidiaries and branded affiliates, markets, brokers, and administers insurance in Nevada, including policies written by Admiral and distributed through RT Specialty. (Resp. to Ryan Specialty 5:11–13). Kabul further summarily states that Ryan Specialty controls these operations and profits directly from Nevada business. (*Id.* 5:14–15). In similar fashion, Kabul

states that RSG participates in brokering and administering insurance policies for businesses operating in Nevada and owned by a Nevada resident, knowing its conduct would cause foreseeable harm here. (Resp. to RSG 17:8–10).  It further alleges that RSG is a sophisticated national broker regularly conducting insurance business nationwide, including Nevada. (*Id.* 17:13–14).  But Kabul provides no evidence to support its arguments, nor does he provide any meaningful points and authorities. *See* LR 7-2(d).

It is Kabul's burden to satisfy the first two prongs of the *Schwarzenegger* test, and it clearly fails to even establish prong one.  Because Kabul fails to establish the first *Schwarzenegger* prong, it has likewise failed to establish that this Court has specific jurisdiction over Ryan Specialty and RSG. *Id.*

### 2. General Jurisdiction

Kabul argues that the Court has general jurisdiction over Ryan Specialty.[8] (Resp. to Ryan Specialty 3:3, ECF No. 108).  Kabul puts forth an argument that Ryan Specialty is "at home" in Nevada because "Ryan Specialty publicly presents its subsidiaries as indistinguishable divisions, shares officers and management, and directs the conduct that gives rise to the claims here." (Resp. to Ryan Specialty 4:22–23).

In *Daimler AG v. Bauman*, 571 U.S. 117, 125 (2014), the United States Supreme Court rejected the Ninth Circuit's use of "agency" to attribute a separate corporate subsidiary's actions to the parent company to allow general jurisdiction. *See Ranza v. Nike, Inc.*, 793 F.3d 1059, 1075 (9th Cir. 2015) ("Exercising general jurisdiction over a foreign subsidiary merely because it markets products on behalf of its local parent resembles the agency theory of imputed jurisdiction the Court rejected in *Daimler*).  In *Williams v. Yamaha Motor Co.,* 851

---

[8] Kabul fails to respond to RSG's arguments regarding general jurisdiction and states that "general jurisdiction is not at issue." (Resp. to RSG 17:7).  The Court therefore construes this as Kabul conceding that the Court does not have general jurisdiction over RSG. *See* LR 7-2(d).

F.3d 1015, 1023 (9th Cir. 2017), the Ninth Circuit noted that "*Daimler* voided our agency approach for imputing contacts for the purpose of general jurisdiction. . . ."

Despite this, Plaintiff relies on *Harris Rutsky & Co. Ins. Servs. v. Bell & Clements Ltd.*, 328 F.3d 1122, 1134 (9th Cir. 2003), a pre-*Daimler* case, to support its argument that "[c]ourts in the Ninth Circuit recognize that where a parent company exercises pervasive control over subsidiaries that transact business in the forum, the parent's contacts may be imputed." (Resp. to Ryan Specialty 4:17–19). But Kabul's reliance on *Harris Rutsky* is misplaced. To begin, *Harris Rutsky* noted that "[i]t is well-established that a parent-subsidiary relationship alone is insufficient to attribute the contacts of the subsidiary to the parent for jurisdictional purposes." 328 F.3d at 1134. The court then went on to recognize two exceptions to that rule: (1) "a subsidiary's contacts may be imputed to the parent where the subsidiary is the parent's alter ego" or (2) "where the subsidiary acts as the general agent of the parent." *Id.* But that latter agency theory is the one that was rejected by *Daimler* and has no more force in this jurisdiction. *Williams*, 851 F.3d at 1024 ("*Daimler*'s reasoning is clearly irreconcilable with the agency test. . . ."). And Kabul fails to apply any analysis or set forth any facts which would support a claim of alter ego in either its Counterclaim/Third-Party Complaint or its Response. Accordingly, Kabul fails to meet its burden of establishing that the Court has general jurisdiction over Ryan Specialty.

In sum, Kabul fails to meet its burden of establishing the Court has personal jurisdiction over Ryan Specialty and RSG.

### 3. Jurisdictional Discovery

Kabul states it is "entitled" to jurisdictional discovery before dismissal. (Resp. to Ryan Specialty 6:18–19 (citing *Laub v. U.S. Dep't of Interior*, 342 F.3d 1080, 1093 (9th Cir. 2003)); (Resp. to RSG 17:19–20). *Laub* explains that jurisdictional discovery should be granted when "the jurisdictional facts are contested or more facts are needed." 342 F.3d at 1093.

As to Ryan Specialty, "[a]lthough the Ninth Circuit has, at times, allowed discovery into the relationship between a parent and subsidiary, it has done so when there is some evidence before it that the corporate formalities have not been maintained." *Pfister v. Selling Source, LLC*, 931 F. Supp. 2d 1109, 1118 (D. Nev. 2013); *see also Martinez v. Manheim Cent. California*, No. 1:10-CV-01511-SKO, 2011 WL 1466684, at *5 (E.D. Cal. Apr. 18, 2011) (explaining jurisdictional discovery on the parent-subsidiary relationship is inappropriate absent at least "a minimal factual showing" of alter ego or agency relationship). Here, Kabul fails to provide even a minimal showing that the corporate formalities have not been maintained in such a way that jurisdictional discovery would be helpful to the Court to analyze an alter ego theory giving rise to personal jurisdiction.

Moreover, both Ryan Specialty and RSG submit declarations in support of their jurisdictional arguments further establishing the futility of jurisdictional discovery. *Pebble Beach Co. v. Caddy*, 453 F.3d 1151, 1160 (9th Cir. 2006) ("[A] plaintiff's claim of personal jurisdiction appears to be both attenuated and based on bare allegations in the face of specific denials made by the defendants, the Court need not permit even limited discovery."); (*see* Martin Decl., Ex. 7 to RSG Mot. Dismiss, ECF No. 90-8); (*see* Martin Decl., Ex. 1 to Ryan Specialty Mot. Dismiss, ECF No. 91-1).

Lastly, Kabul, who has been involved in discovery in this matter for some time, does not identify what further discovery would be done or what it could be expected to show, which would allow the Court to evaluate the need for discovery. Accordingly, the Court denies Kabul's request to allow it to conduct jurisdictional discovery.

In sum, Ryan Specialty and RSG's Motions to Dismiss are GRANTED. Because Kabul has had ample opportunity to conduct discovery of Ryan Specialty, RT Specialty, and RSG Specialty, LLC and still fails to meet its burden of establishing that the Court has personal

jurisdiction over the parties, the Court finds that amendment would be futile.  Accordingly, Ryan Specialty, RT Specialty, and RSG Specialty, LLC are DISMISSED with prejudice.

### B.  Motions to Dismiss under FRCP 12(b)(6)

The remaining moving parties argue that each claim pled against them should be dismissed under FRCP 12(b)(6).[9]  The Court addresses each claim below.[10]

### 1.  Breach of Contract

Kabul alleges a breach of contract claim against Admiral and Armstrong Teasdale. Under Nevada law, a counter-claimant alleging breach of contract must show: (1) the existence of a valid contract between the parties; (2) the counter-claimant's performance, inability to perform, or excuse from performance; (3) the counter-defendant's material failure to perform; and (4) damages resulting from the failure to perform. *See* Restatement (Second) of Contracts § 203 (2007); *Calloway v. City of Reno*, 993 P.2d 1259, 1263 (Nev. 2000).  AT points out, and the Court agrees, that Kabul's Counterclaim (1) fails to allege the existence of a valid contract between itself and Armstrong Teasdale and is devoid of any facts that allege how Armstrong Teasdale breached the (unalleged) contract.  Moreover, Kabul fails to allege any facts that support the element of its own performance, inability to perform, or excuse from performance under the contract as to Armstrong Teasdale and Admiral.  Furthermore, to the extent that

---

[9] The Court notes that Admiral and AT also move to dismiss certain claims under Nevada's Anti-SLAPP statute, NRS 41.660. (*See* Admiral NRS 41.660 Mot. Dismiss, ECF No. 48); (AT Mot. Dismiss, ECF No. 78).  Nevada's anti-SLAPP statute consists of two prongs: "A court must grant an anti-SLAPP special motion to dismiss where (1) the defendant shows, by a preponderance of the evidence, that the claim is based on a 'good faith communication in furtherance of [the right to petition or] the right to free speech in direct connection with an issue of public concern' and (2) the plaintiff fails to show, with prima facie evidence, a probability of prevailing on the claim." *Williams v. Lazer*, 495 P.3d 93, 97 (Nev. 2021).  Because Kabul's Counterclaim/Third-Party Complaint fails to meet basic pleading standards, the Court cannot ascertain Kabul's probability of prevailing on the merits of its claim.  As such, Admiral's Motion to Dismiss under NRS 41.660 is DENIED without prejudice and AT's Motion to Dismiss is denied, in part, without prejudice.

[10] In its Responses to the moving parties, Kabul attempts to litigate factual disputes. (*See, e.g.*, Resp. to Admiral, ECF No. 80).  FRCP 12(b)(6) motions test the *legal* sufficiency of a complaint. *N. Star Int'l v. Arizona Corp. Comm'n*, 720 F.2d 578, 581 (9th Cir. 1983) (emphasis added).  It is therefore improper for Kabul to litigate factual disputes at the dismissal stage, and the Court does not consider Kabul's arguments regarding factual disputes.

Kabul's breach of contract claim against Admiral is based on issues already decided by final judgment in 2:22-cv-00177-CDS-NJK, Kabul cannot succeed on its breach of contract claim here.[11] *See United States v. Bhatia*, 545 F.3d 757, 759 (9th Cir. 2008). Accordingly, this claim is DISMISSED, but the Court grants Kabul leave to amend.

### 2. Breach of the Covenant of Good Faith and Fair Dealing

Next, Kabul alleges a claim for breach of the implied covenant of good faith and fair dealing against Admiral. To begin, Kabul does not specify whether this claim is brought based upon contract or tort law in its Counterclaim/Third-Party Complaint. Because of this, Admiral provided arguments for dismissal under both standards. (Admiral 12(b)(6) Mot. Dismiss 9:14–20, n. 9). Kabul only responded to Admiral's arguments regarding the breach of good faith and fair dealing under tort law. (*See* 12(b)(6) Resp. to Admiral 19:11–23). Thus, for purposes of this Order the Court considers this claim under tort law.

Under Nevada law, breach of the implied covenant of good faith and fair dealing can give rise to a tort when a special relationship exists between the parties to the contract, such as the relationship between an insurer and the insured. *Ins. Co. of the W. v. Gibson Tile Co.*, 134 P.3d 698, 702 (Nev. 2006). In the insurance context, this tort is commonly referred to as a claim for "bad faith." *See id.* at 703. "An insurer breaches the duty of good faith when it refuses 'without proper cause to compensate its insured for a loss covered by the policy.'" *Pioneer Chlor Alkali Co. v. Nat'l Union Fire Ins. Co. of Pittsburgh, Pennsylvania*, 863 F. Supp. 1237, 1242 (D. Nev. 1994) (quoting *U.S. Fidelity & Guar. Co. v. Peterson*, 540 P.2d 1070, 1071 (Nev. 1975)). To constitute a denial "without proper cause" an insurer must have an "actual or implied awareness of the absence of a reasonable basis for denying benefits of the policy." *Am. Excess Ins. Co. v. MGM Grand Hotels, Inc.*, 729 P.2d 1352, 1354 (Nev. 1986) (citing *Peterson*, 540 P.2d at 1070). In other words, an insurer's incorrect determination that

---

[11] The same is true for any other claims brought by Kabul against Admiral.

coverage does not exist under a particular policy is not an actionable tort, unless there was no reasonable basis for that determination. *Pioneer*, 863 F. Supp. at 1242.

Here, Kabul's Counterclaim/Third-Party Complaint lacks any allegations that Admiral denied coverage without an actual or implied awareness that there was no reasonable basis supporting its decision. Instead, Kabul appears to disagree with Admiral's determination that coverage did not exist under the policy, (Counterclaim/Third-Party Compl. ¶¶ 25–27), which alone, is insufficient to state a claim to relief that is plausible on its face and is an issue that has already been decided by final judgment in the Declaratory Action. Thus, this claim is DISMISSED, but the Court grants Kabul leave to amend.

### 3. NRS 686A.310

Kabul alleges that Admiral violated NRS 686A.310. NRS 686A.310 provides a list of certain actions that constitute unfair practices in settling insurance claims. *See* Nev. Rev. Stat. 686A.310. Admiral argues that Kabul fails to allege any factual support for this claim. The Court agrees. To plead this claim, Kabul merely recites portions of NRS 686A.310, with no supporting facts, which is insufficient to state a claim. *Twombly*, 550 U.S. at 555. Thus, the claim is DISMISSED, but the Court grants Kabul leave to amend.

### 4. Negligence

Kabul next asserts a negligence claim against all moving parties. Under Nevada law, "[t]o prevail on a negligence claim, a plaintiff must establish four elements: (1) the existence of a duty of care, (2) breach of that duty, (3) legal causation, and (4) damages*." Sanchez ex rel. Sanchez v. Wal-Mart Stores, Inc.*, 221 P.3d 1276, 1280 (Nev. 2009). The claim fails against each moving party for the reasons discussed below.

First, as to Admiral, "[a]n insurer's obligations arise from the insurance contract and the law." *See Allstate Ins. Co. v. Miller*, 212 P.3d 318, 330 (Nev. 2009). "Because negligence is a tort, the breach must be a violation of a duty imposed by law independent of a breach of a

contractual duty." *Williams v. Univ. Med. Ctr. of S. Nevada*, 688 F. Supp. 2d 1134, 1144 (D. Nev. 2010). Here, as Admiral argues, Kabul fails to plead the source of Admiral's alleged duty imposed by law, instead merely stating that Admiral owed Kabul a duty of care in handling the policy and claim. (Counterclaim/Third-Party Compl. ¶ 32). It also fails to plead the element of causation and facts to support the element.

As to Nationwide, AT, and Eidsness, Kabul asserts that they also "owed Kabul a duty of care in handling the policy and claim." (Counterclaim/Third-Party Compl. ¶ 32). But this allegation is conclusory, and Kabul fails to plead facts that demonstrate that Nationwide, AT, and Eidsness each owed Kabul a duty of care. Courts routinely dismiss negligence claims when a claimant fails to specifically identify the basis of a defendant's duty of care. *See, e.g.*, *Phillips v. Clark Cnty. Sch. Dist.*, 903 F. Supp. 2d 1094, 1104–1105 (D. Nev. 2012) (finding a plaintiff's failure to "identify the legal source of [] duty" was basis for dismissal). Moreover, Kabul also fails to plead the element of causation and facts to support the element.

Finally, Kabul's negligence claim fails to allege with any particularized specificity how each party is liable for negligence. The claim therefore fails because it does not allow the court to draw the reasonable inference that each defendant is liable for the negligence. *Iqbal*, 556 U.S. at 678. In sum, this claim is DISMISSED, but the Court grants Kabul leave to amend.

### 5. Fraud

Kabul alleges a fraud claim against Admiral, AT, Eidsness, and Nationwide. The moving parties argue that this claim should be dismissed because Kabul fails to meet the heightened pleading standard required of a fraud claim. The Court agrees.

"In alleging fraud or mistake, a party must state with particularity the circumstances constituting fraud or mistake." Fed. R. Civ. P. 9(b). FRCP 9(b) requires that claims of fraud be accompanied by the "who, what, when, where, and how" of the conduct charged. *Vess v. Ciba-Geigy Corp. USA*, 317 F.3d 1097, 1106 (9th Cir. 2003) (quoting *Cooper v. Pickett*, 137 F.3d

616, 627 (9th Cir. 1997)). In other words, the complaint "must include 'an account of the time, place, and specific content of the false representations as well as the identities of the parties to the misrepresentations.'" *Depot, Inc. v. Caring for Montanans, Inc.*, 915 F.3d 643, 668 (9th Cir. 2019) (quoting *Swartz v. KPMG LLP*, 476 F.3d 756, 764 (9th Cir. 2007) (per curiam)) (internal quotations omitted). FRCP 9(b)'s particularity requirement ensures that defendants are on "notice of the particular misconduct. . . so that they can defend against the charge and not just deny that they have done anything wrong." *Vess*, 317 F.3d at 1106 (quoting *Bly-Magee v. California*, 236 F.3d 1014, 1019 (9th Cir. 2001)).

Here, the Counterclaim/Third-Party Complaint plainly fails to meet the heightened pleading standard under FRCP 9(b). For example, it in no way provides an account of the time and place of the alleged false representations. Thus, this claim is DISMISSED, but the Court grants Kabul leave to amend.

### 6. Civil Conspiracy

Kabul alleges a claim for civil conspiracy against all the moving parties. The moving parties seek dismissal of this claim arguing that Kabul does not specifically allege how each moving party joined and participated in any conspiracy.

Under Nevada law, a civil conspiracy is a "combination of two or more persons who, by some concerted action, intend to accomplish some unlawful objective for the purpose of harming another which results in damage." *Collins v. Union Fed. Sav. & Loan Ass'n.*, 662 P.2d 610, 622 (Nev. 1983). Similar to pleading claims of fraud, pleading a claim of civil conspiracy requires "particular specificity as to 'the manner in which a defendant joined in the conspiracy and how he participated in it.'" *Century Sur. Co. v. Prince,* 265 F. Supp. 3d 1182, 1194 (D. Nev. 2017), *aff'd,* 782 F. App'x 553 (9th Cir. 2019) (citing *Arroyo v. Wheat*, 591 F. Supp. 141, 144 (D. Nev. 1984)). Conclusory allegations of civil conspiracy or a "mere recitation of the elements of civil conspiracy" is not enough to survive dismissal of the claim. *Id.* at 1194–1195.

Here, the moving parties are correct that the Counterclaim/Third-Party Complaint fails to allege with specificity how each defendant is liable for civil conspiracy and merely recites the elements of the claim.  Thus, the Court DISMISSES the civil conspiracy claim, but grants Kabul leave to amend.

### 7.   Abuse of Process

Kabul alleges an abuse of process claim against Admiral and AT.  Admiral and AT move to dismiss this claim arguing that Kabul fails to state a claim and the allegations for this claim are conclusory.

In Nevada, the elements of an abuse of process claim are "(1) an ulterior purpose by the defendants other than resolving a legal dispute, and (2) a willful act in the use of the legal process not proper in the regular conduct of the proceeding." *LaMantia v. Redisi*, 38 P.3d 877, 879 (Nev. 2002).  "An ulterior purpose is any improper motive underlying the issuance of legal process." *Posadas v. City of Reno*, 851 P.2d 438, 445 (Nev. 1993).  It is not necessary to show malice or want of probable cause to recover for abuse of process. *Id.*  Under Nevada law, the filing of a complaint itself does not constitute an abuse of process. *Laxalt v. McClatchy*, 622 F. Supp. 737, 752 (D. Nev. 1985).  Rather, it is "the action[ ] which the [filer takes] (or fail[s] to take) *after* the filing of the complaint" that constitutes abuse of process. *Id.* (emphasis in original).  "[T]he gist of the tort [of abuse of process] is. . . misusing or misapplying process justified in itself for an end other than that which it was designed to accomplish." *Id.* at 751 n. 3 (quoting Prosser, Law of Torts 856 (4th ed. 1971)); *see also Nevada Credit Rating Bureau, Inc. v. Williams*, 503 P.2d 9, 12 (Nev. 1972) ("The action for abuse of process hinges on the misuse of regularly issued process. . . .").

As to the first element—ulterior motive—Kabul alleges that Admiral and AT engaged in improper litigation tactics with the ulterior motive to deny Kabul coverage and "extort"[12] money from Kabul. (Counterclaim/Third-Party Compl. ¶ 42).  But Admiral and AT admit that the purpose of the Declaratory Action litigation was in fact to obtain a judgment declaring that there was no coverage over the Lynch Action (*i.e.* to deny Kabul coverage), and the purpose of bringing this present action is to recover the funds Admiral spent on Kabul's defense and indemnity (*i.e.* to get money from Kabul). (Admiral 12(b)(6) Mot. Dismiss 24:1–3); (AT Mot. Dismiss 13:20–21).  Accordingly, the "ulterior" motive Kabul pleads is not ulterior at all and it therefore fails to plead a plausible abuse of process claim for relief.[13]  Thus, this claim is dismissed, but the Court grants Kabul leave to amend.

### 8.  Racketeering under NRS 207.470

Kabul alleges a racketeering claim against all moving parties and they each move to dismiss the claim arguing that it either fails to state a claim or impermissibly lumps them together.

To survive a motion to dismiss, a civil complaint under Nevada's RICO act must plausibly allege three elements: "(1) the plaintiff's injury must flow from the defendant's violation of a predicate Nevada RICO act; (2) the injury must be proximately caused by the defendant's violation of the predicate act; and (3) the plaintiff must not have participated in the commission of the predicate act." *Allum v. Valley Bank of Nevada*, 849 P.2d 297, 283 (Nev. 1993).  A claimant must allege that the defendant "engag[ed] in at least two crimes related to racketeering that have the same or similar pattern, intents, results, accomplices, victims or

---

[12] To extort means "to obtain from a person by force, intimidation, or undue or illegal power." Extort. Merriam-Webster Dictionary, https://www.merriam-webster.com/dictionary/extort (last visited Feb. 7, 2026).  Kabul's Counterclaim/Third-Party Complaint is devoid of any facts to support that Admiral and AT used force, intimidation, or undue or illegal power.

[13] Kabul also impermissibly lumps Admiral and AT together to plead this claim.  The Counterclaim/Third-Party Complaints fails to plead with specificity the actions of both Admiral and AT that would give rise to abuse of process.

methods of commission, or are otherwise interrelated by distinguishing characteristics and are not isolated incidents. . . ." *Brown v. Kinross Gold, U.S.A.*, 378 F. Supp. 2d 1280, 1287 (D. Nev. 2005) (citing NRS 207.390). Claims under Nevada's RICO statute "must plead the two crimes relating to racketeering with specificity." *Brown*, 378 F.Supp.2d at 1287 (citing *Hale v. Burkhardt*, 764 P.2d , 869–850 (Nev. 1988)).

Kabul generally alleges that each moving party (1) "represent[ed] that there were a list of jet skis associated with the 2020 policy in the reservation of rights letter, court filings and affidavits prepared by Armstrong Teasdale," (2) "modif[ied] the 2021 policy through RSG without the knowledge and consent of Kabul in November of 2021 in order to fraudulently require a list on the 2021 policy and fraudulently not list the involved jet ski on the 2021 list," and (3) that "Armstrong Teasdale made false statements to the court and knowingly offered false testimony that the jet ski was not on the 2021 list of jet skis." (Counterclaim/Third-Party Compl. at ¶ 45).

The first two allegations do not give rise to a racketeering cause of action because Kabul fails to demonstrate how they qualify as "crimes related to racketeering." *Brown*, 378 F. Supp. 2d at 1287. Kabul does not specify what crimes were committed in making representations or modifying insurance policies, nor does Kabul identify whom among the various counter, cross, and third-party defendants made these representations and when. Moreover, the remaining allegation, that Armstrong Teasdale made false statements to the court and knowingly offered false testimony, fails to meet the heightened pleading standard of FRCP 9(b) because it does not identify the nature and content of the false statements and false testimony, when these false statements and testimony were made, and in what specific pleadings or hearings the false representations were made. Kabul therefore fails to state a civil RICO claim. Accordingly, this claim is dismissed, but the Court grants Kabul leave to amend.

### 9. Damages

Kabul claims to have suffered emotional distress in his claims for breach of contract, violation of NRS 686A.310, negligence, and civil conspiracy. Admiral moves to dismiss Kabul's request for emotional distress damages arguing that a corporation cannot recover emotional distress damages. (Admiral 12(b)(6) Mot. Dismiss 18:1–3 (citing *See, e.g., F.D.I.C. v. Hulsey*, 22 F.3d 1472, 1489 (10th Cir. 1994) ("Since a corporation lacks the cognizant ability to experience emotions, a corporation cannot suffer emotional distress."); *see also Dynamic Image Techs, Inc. v. United States*, 221 F.3d 34, 37 n.2 (1st Cir. 2000) ("[C]orporations, unlike natural persons, have no emotions."); *Lampliter Dinner Theater, Inc. v. Liberty Mut. Ins. Co.*, 792 F.2d 1036, 1040 (11th Cir. 1986) ("corporations cannot experience emotional distress")). Kabul asserts, without any cited authority, that emotional distress damages are viable for corporations in bad faith contexts where severe impact is alleged. (Resp. to Admiral 19:8–9). The Court finds at least two examples of where a court in the District of Nevada explained that a corporation cannot experience emotional distress. *See Vierich v. MGM Grand Hotel, LLC*, No. 2:11-CV-01623-KJD, 2012 WL 5387674, *3 (D. Nev. Nov. 1, 2012); *Reva Int'l, Ltd. v. MBraun, Inc.*, No. 0306CV-00306-LRH-VPC, 2007 WL 4592216, at *10 (D. Nev. Dec. 28, 2007). Accordingly, Kabul can plead no set of facts which might entitle it to damages for emotional distress, and as such the Court DISMISSES these damages with prejudice.

## IV. CONCLUSION

**IT IS HEREBY ORDERED** that Admiral's NRS 41.635 Motion to Dismiss, (ECF No. 48), is **DENIED** without prejudice.

**IT IS FURTHER ORDERED** that Admiral's Federal Rule of Civil Procedure 12(b)(6) Motion to Dismiss, (ECF No. 49), is **GRANTED**.

**IT IS FURTHER ORDERED** that Nationwide's Motion to Dismiss, (ECF No. 62), is **GRANTED**.

**IT IS FURTHER ORDERED** that AT's Motion to Dismiss, (ECF No. 78), is **GRANTED, in part,** and **DENIED, in part** without prejudice.

**IT IS FURTHER ORDERED** that RSG's Motion for Leave, (ECF No. 89), is **GRANTED**.

**IT IS FURTHER ORDERED** that RSG's Motion to Dismiss, (ECF No. 90), is **GRANTED**.  RT Specialty and RSG Specialty, LLC are **DISMISSED** with prejudice.

**IT IS FURTHER ORDERED** that Ryan Specialty's Motion to Dismiss, (ECF No. 91), is **GRANTED**.  Ryan Specialty is **DISMISSED** with prejudice.

**IT IS FURTHER ORDERED** that Eidsness's Motion to Dismiss, (ECF No. 117), is **GRANTED**.

**IT IS FURTHER ORDERED** that Kabul shall have 21 days from the date of this Order to file an amended Crossclaim/Third-Party Complaint to cure the deficiencies identified in this Order and in the briefing.  This will be the only amendment the Court will allow.

**DATED** this __11__ day of February, 2026.

_____
Gloria M. Navarro, District Judge
United States District Court