1
2
3
4
5

Thomas F. Christensen, Esq.
Nevada Bar #2326
Christensen Law Offices, LLC
1000 S. Valley View Blvd.
Las Vegas, NV 89107
T:702-870-1000
courtnotices@injuryhelpnow.com
*Attorneys for Kabul*

6

7

**IN THE UNITED STATES DISTRICT COURT**
**DISTRICT OF NEVADA**

8

9

ADMIRAL INSURANCE COMPANY,
                    Plaintiff,

10

vs.

11

KABUL, INC. d/b/a FASTRIP PWC
RENTALS, KABUL, INC. d/b/a FASTRIP
FOOD STORE,

12

                    Defendant.

13

14

Case No.:
2:24-cv-02060-GMN-MDC

Consolidated with
2:25-cv-01343-GMN-MDC

**AMENDED
COUNTER/CROSS/THIRD
PARTY COMPLAINT**

15

16

KABUL, INC., dba FASTRIP PWC and
FASTRIP FOOD STORE,
                    Counter/Cross/Third PartyClaimant,

17

v.

18

19

20

21

22

23

24

25

ADMIRAL INSURANCE COMPANY,
GREGG EIDSNESS FARM BUREAU
FINANCIAL SERVICES, LocalEdge Insurance
Agency, Inc, fka NBS Insurance Agency, Inc.
aka NATIONWIDE BROKERAGE
SOLUTIONS, RT SPECIALTY, LLC, RSG
SPECIALTY, LLC, RYAN SPECIALTY, LLC,
ERIK W. FOX, WOLFE & WYMAN, LLP,
KEVIN R. STOLWORTHY, ARMSTRONG
TEASDALE, LLP, and DOES I through X,
inclusive; and ROE CORPORATIONS I
through X, inclusive,
                    Counter/Cross/Third Party Defendants.

**JURY DEMANDED**

26

27

28

.

1

**AMENDED COUNTERCLAIM, CROSS-CLAIM, AND THIRD-PARTY COMPLAINT**

COMES NOW Defendant Kabul, Inc. d/b/a Fastrip PWC Rentals and Kabul, Inc. d/b/a Fastrip Food Store (collectively "Kabul"), by and through its attorneys, Christensen Law Offices, LLC, and hereby submits its amended counterclaim/crossclaim/third-party claim against Admiral, Gregg Eidsness Farm Bureau Financial Services ("Eidsness"), LocalEdge Insurance Agency, Inc, fka NBS Insurance Agency, Inc. aka NATIONWIDE BROKERAGE SOLUTIONS, ("Nationwide"), RT Specialty ("RT"),  Wolfe & Wyman LLP, Erik W. Fox (collectively "Wolfe & Wyman"), KEVIN R. STOLWORTHY, ARMSTRONG TEASDALE, LLP and DOES I through X and ROE CORPORATIONS I through X.  Kabul appreciates the opportunity the Court has provided it to update, clarify and in detail state the factual basis of Kabul's claims. Because the Court dismissed certain claims against certain parties with prejudice, Kabul will file, concurrently with this amended pleading, a motion for reconsideration of the with prejudice finding.

## I. INTRODUCTION

Commercial insurance plays an important role in society. Its fundamental purpose is to spread risk so that unexpected losses can be paid without forcing a business to shut down, while also fairly determining who is responsible. The commercial policy at issue here was priced and issued to allocate and spread business risk for jet ski rental operations. The policy did not insure any jet skis or any vessels. The relevance of that structure to this pleading is narrow but critical. Any claimed schedules required or made a part of the policy were forgeries. Because that factual premise materially affected the prior Court's analysis, and all defendants published, relied on and refused to correct the misrepresentations, punitive damages are pled and warranted to prevent further improper forgery and use of forged documents in litigation.

## II. PARTIES

1.  Plaintiff Kabul, Inc. ("KABUL"). At all times relevant, KABUL was an Arizona corporation with its principal place of business in Arizona, operating a jet ski rental business in Arizona.

2.  Defendant Admiral Insurance Company ("ADMIRAL").  At all times relevant, ADMIRAL was and is a Delaware corporation with its principal place of business in Arizona, licensed to conduct insurance business in Arizona and Nevada, and has adjusted claims in Nevada.

3.  Defendant Gregg Eidsness Farm Bureau Financial Services ("EIDSNESS"). At all times relevant, EIDSNESS was an insurance agent incorporated and having its principal place of business in Bullhead City, Arizona.

4.  Defendant NBS Insurance Agency, Inc. aka Nationwide Brokerage Solutions ("NATIONWIDE"). At all times relevant, NATIONWIDE was a Delaware corporation and broker doing business in Arizona and Nevada, issuing policies and adjusting claims in Nevada (National Producer Number 27920).

5.  Defendant RT Specialty, LLC ("RT"). At all times relevant, RT was a wholesale brokerage division and wholly owned subsidiary of RSG Specialty, LLC, a Delaware limited liability company, which is a subsidiary of Ryan Specialty, LLC, a Delaware limited liability company managed solely by Ryan Specialty Holdings, Inc.  Further, RT is a broker doing business in Arizona and Nevada and entered into a contract with Kabul's president in Nevada and Arizona to provide brokerage services beginning on May 11, 2020 and continuing at least until May of 2022 to obtain insurance policies covering Kabul's specific operation of "jet ski rental."

6.  Defendants Erik W. Fox & Wolfe & Wyman LLP  (collectively "WOLFE & WYMAN"). At all times relevant, Erik W. Fox was a lawyer located and doing business in Nevada, employed by

Wolfe & Wyman LLP and Wolfe & Wyman LLP was and is a law firm located and doing business in Las Vegas, Nevada.

7.  Defendants Kevin R. Stolworthy &  Armstrong Teasdale, LLP  (collectively "Armstrong Teasdale"). At all times relevant, Kevin R. Stolworthy was a lawyer located and doing business in Nevada, employed by Armstrong Teasdale, LLP and Armstrong Teasdale, LLP was and is a law firm located and doing business in Las Vegas, Nevada.

### III. FICTICIOUS DEFENDANTS

8. The true names and capacities of Defendants DOES I through X and ROE CORPORATIONS I through X are unknown to Plaintiff, who sues them by such fictitious names. Plaintiff will amend this complaint to insert their true names and capacities when ascertained.

### IV. AGENCY AND AUTHORITY

9. At all relevant times, all Counter-Defendants were acting as officers, directors, brokers, agents, contractors, advisors, servants, partners, joint venturers, employees, and/or alter-egos of their co-Defendants, within the scope of their authority, and with the permission and consent of their co-Defendants.

### V. JURISDICTION AND VENUE

10. Kabul asserts this Court lacks jurisdiction and venue is improper and this action should at least be stayed pending the resolution of issues in other courts and venues including the appeal in case No. 2:22-cv-00177; but, to preserve these necessary actions against other parties, they are being pled herein.

11. Admiral's claims are based on a judgment void because of lack of jurisdiction. In the first case brought by Admiral (No. 2:22-cv-00177) the Court ruled in Admiral's favor on summary judgment after the basis for jurisdiction had become moot. 2:21-cv-01981-ART-DJA ECF No. 93

Admiral's duty to defend and duty to indemnify ceased on February 1, 2024. Because the Court lacked jurisdiction, the judgment is void and Kabul brings this claim to have that judgment vacated and set aside.

12. Admiral's claims are based on a judgment that precludes Admiral's claims. In the alternative the Court in the first case found jurisdiction based on her ability to award monetary relief to Admiral for Kabul's defense attorney fees and indemnity payments even though not pled pursuant to "Nautilus Insurance Company v. Access Medical, LLC. The cite is 482 P.3d 683. The PIN cite is 689." 2:22-cv-00177 ECF No. 177 Admiral's counsel admitted Admiral "can pursue it [indemnity and defense reimbursement] … here … even though it's unpled." *Id.* at p. 19 lns. 6-8 Admiral could have litigated the monetary relief Admiral seeks in this action in the first action. Claim preclusion unlike issue preclusion bars not only claims actually litigated but claims that could have been brought but were not. Admiral's claims here are barred by claim preclusion.

13. Admiral's claims are based on a judgment void because obtained by fraud participated in by all defendants. The judgment rested on contested material facts that are not supported by the record chief among them: that coverage under these policies depended on the existence of a schedule of individual jet skis. The undisputed evidence shows the policies insured **operations**, not scheduled equipment, and no such genuine schedule existed at issuance or thereafter. All defendants conspired with Admiral in forging contracts, publishing, relying on, failing to correct, misleading the court. Admiral recorded early in the investigation that: "This could be an E&O exposure for the agent/broker" (Admiral_2300-2302 claims file excerpts at Admiral 2301) Instead of disclosing this information to Kabul, Admiral kept that information from Kabul and instead conspired with the each of the other defendants to defraud Kabul out of coverage. Because that premise materially affected both the summary judgment ruling and the Rule 54(b)

certification, the final judgment in the first case was obtained by fraud and is subject to collateral attack. Kabul attempted to have each of the defendants correct the forgeries published to the court to enable a proper decision by the court.  The parties and their counsel refused to correct the record and continue to rely on forged documents and fraudulently obtained rulings giving rise to the  causes of action set forth in this amended pleading.  Because the factual allegations overlap between defendants and causes of action the particular headings are only for convenience and do not limit either the causes of action pled nor the factual basis for any particular cause of action. Rather the entire pleading must be taken as a whole.

## VI. FACTUAL ALLEGATIONS REGARDING RT'S JURISDICTION

14.  On May 11, 2020 Kabul's president (who is a resident of both Nevada and Arizona) signed a contract for services to be performed in both Arizona and Nevada with RT at RT's request.

15.  RT, through its agents, contacted Kabul in Nevada to be the "double" broker on the 2020 policy insuring Kabul's operation of "Jet Ski rental."

16.  The policy was not sought to insure any vessels used in interstate commerce. (See RS000183)

17.  RT, between its retention by Kabul on May 11, 2020 through the expiration date of the 2020 policy on May 22, 2021, did not request from Kabul a schedule of jet skis for the application, the issuance or the continuation of the 2020 policy.

18.  RT did not provide Admiral with a schedule of jet skis with the application or following the issuance of the policy.

19.  Admiral alleges that RT is the only entity that can provide or update any schedule of jet skis on any Kabul policy.

20.  Admiral did not request from RT a schedule of jet skis prior to or following issuance of the policy.  (See RS000170-000172)

21.  RT admits in its Motion to Dismiss (ECF No. 90) that Kabul is asserting contract claims against it.  "On March 23, 2023, …claims against Admiral, RSG, and NBS … which mirror the allegations currently asserted…claiming that Admiral acted 'in concert with the other cross defendants in a scheme of post claim underwriting' (Exhibit 2, 13:6-10), as well as **breach of contract** [emphasis added], breach of the duty of good faith and fair dealing … **Those claims, which are again asserted here were all expressly dismissed against RSG**…"  (ECF No. 90, p. 4 lns., 14-22) This fact that RT admits contractual claims were alleged was overlooked by the court in dismissing claims against RT.

22.  In addition, the declaration of Steven J. Martin, on behalf of RT, confirms the contract between Kabul and RT speciality: "RT Specialty, LLC was the entity involved [contracted by Najib Noori a Nevada and Arizona resident] in brokering the Admiral policy involved in this case." (ECF No. 91-1 p.1 ln. 27)

23.  Steven J. Martin engaged in perjury in a Nevada court in obtaining dismissal of RT Specialty.  He states on September 11, 2025 that:  "That activity in relation to the Admiral policy at issue involved procurement of a policy for an Arizona insured covering risks in Arizona, via NBS in Ohio."  This is false in at least two respects. The risks covered included risks in Nevada this court ruled: ("Magistrate Judge Couvillier correctly determined that Nevada law, not Arizona law, is applicable to this matter." ECF No. 47, p. 9, lns. 10 & 11) and RT Specialty contracted directly with Kabul's owner Najib Noori who is a resident of Arizona and Nevada. This  contract was requested and executed with RT Specialty for broker services at RT Specialty's specific request to Najib Noori in Nevada.

24.   RSG Specialty, LLC submitted to personal jurisdiction in the district of Nevada in the first action filed by Admiral. 2:22-cv-00177 ECF No. 117  Just as the Court has found Kabul cannot now contest jurisdiction or venue because Kabul did not raise the issue in the prior case RSG Specialty, LLC has consented to both jurisdiction and venue here.

## VII. GENERAL FACTUAL ALLEGATIONS

**Application for Liability Policy in 2020**

25. Application for 2020 Policy.  KABUL, whose principal officer is both a resident of Las Vegas, Nevada and Bullhead City, Arizona, sought to obtain a liability policy through ADMIRAL covering its specified operation of "JET SKI RENTAL" for the 2020 summer season.

26. Brokerage Changes. On May 6, 2020, prior to obtaining the policy for the 2020 season NATIONWIDE "the controlling broker" conspired with Admiral to replace the "double broker" Risk Placement Services with RT, a change not authorized or adequately explained to KABUL by EIDSNESS, NATIONWIDE, ADMIRAL, or RT.

27. The double broker relationship with NATIONWIDE as the controlling broker and RT as the subservient double broker makes each liable for the failures and breaches of the other especially where both kept the nature of the relationship from the insured.

28. The change in brokers initiated by NATIONWIDE caused the 2019 policy to lapse and created a rush situation which resulted in the mutual mistake of **no jet skis on any list** with ADMIRAL being provided in the application.  *Id.* at Admiral_000521

29. On May 11, 2020, RT submitted an application for a new Kabul jet ski rental operations policy with ADMIRAL for the specified operation of "JET SKI RENTAL." The application prepared and submitted by RT to Admiral did not require or include a list of individual jet skis.

**Issuance of 2020 Liability Policy**

30. ADMIRAL issued Policy No. CA000038462-01 ("2020 Policy") for May 22, 2020 to May 22, 2021, with coverage for specified operations of "JET SKI RENTAL." No schedule of jet skis was required or attached to the 2020 Policy. No vessels including individual jet skis are insured under the policy.  Only the specified operation of "JET SKI RENTAL" is insured under the policy.

31.  KABUL paid the full premium of $30,344.00 for the 2020 Policy

32. Even though Kabul was not asked to provide a list of individual jet skis for the 2020 policy and provided no insurance for the jet skis but only Kabul's specified operation of "JET SKI RENTAL" Kabul, by custom and practice, supplied Admiral (through Eidsness) with the 2020 registrations of all jet skis used in Kabul's jet ski rental operation.

**Issuance of 2021 Policy**

33. ADMIRAL issued Policy No. CA000038462-02 ("2021 Policy") for the term 5/22/2021 to 5/22/2022, covering "JET SKI & BOAT RENTAL" operations without requiring a schedule of individual jet skis or boats.  Vessels, including individual jet skis and boats, are not insured under the policy.  The specified operation of "JET SKI & BOAT RENTAL" is insured under the policy.

34.  KABUL paid the full premium of $45,360.00 for the 2021 Policy.

35. Even though the 2021 policy at issuance had no requirement of a list of individual jet skis or boats and provided no insurance for the jet skis or boats, but only Kabul's specified operation of "JET SKI & BOAT RENTAL", Kabul, by custom and practice, supplied Admiral (through Eidsness) with the 2021 registrations of all jet skis used in Kabul's jet ski rental operation.

///

///

**Course of conduct**

36. EIDSNESS, NATIONWIDE, RT and ADMIRAL never informed Kabul that coverage for Kabul's jet ski rental business would be voided if a list of individual jet skis was not part of the application.

37. Eidsness, Nationwide, RT and Admiral never informed Kabul of any method to update or verify the schedule of jet skis on file with Admiral.

38. ADMIRAL unreasonably refused to update the schedule of jet skis or allow Kabul to update the schedule of jet skis on file with the company.

39. As a direct result of the breach of contract and fraudulent activities of RT, there was never any individual jet skis on a list with ADMIRAL for the 2020 policy.

40. As a direct result of the breach of contract and fraudulent activities of RT, a Boats Endorsement referencing a schedule of jet skis was not a part of the 2021 policy at issuance.

41. At no time during the 2020 or 2021 policy terms did Admiral, RT, Nationwide or Eidsness furnish Kabul with any list of jet skis on file with Admiral or audit any list of jet skis on file with Admiral.

42. ADMIRAL did audit the income Kabul received from the jet ski rental operations.

43. This resulted in a course of conduct where Kabul was led to believe that the providing of information on individual jet skis was merely an incidental, non-material function.

44. Kabul maintained a custom and practice of immediately updating Nationwide, RT and ADMIRAL (through Eidsness) with jet ski registrations immediately as they were received.

45. Regardless of the lack of importance on a schedule of jet skis contained in the policies and communicated by Eidsness, Nationwide, RT and Admiral, Kabul maintained a custom and

practice of immediately updating all Defendants (through Eidsness) with jet ski registrations immediately as they were received.

46. Eidsness confirms this course of conduct specifically with the three groups of 2020 jet ski registrations (totalling 24),  To this day, ADMIRAL claims there is no schedule of jet skis on file with Admiral associated with the 2020 policy, even though Admiral's file contains a schedule (list) of all twenty-four(24) 2020 jet skis registrations, including the YAMA3877C020 jet ski rental in the Lynch claim. *(See  ECF No. 128-7 in the First Case (No. 2:22-cv-00177) as Exhibit 5, "The insured always provides us a copy of the new registrations every year…I have attached the copies he provided our office for the term in question." at Bates Admiral_002189 and the attached schedule of twenty four(24) 2020 jet ski registrations at Admiral_002191-2199; and, ECF No. 84-15 in the Second Case (No. 2:24-cv-0260) at page 3 of 13, Bates Admiral_002189-2199.)*

 47. Eidsness knows that Kabul provided all information on jet skis for the 2020 policy including the YAMA3877C020 jet ski rental in the Lynch claim.

48. Eidsness knows that Kabul provided all information on jet skis for the 2020 policy including the YAMA3877C020 jet ski rental in the Lynch claim and that Eidsness,  Nationwide, RT and /or Admiral   failed to update the record.

 49. Eidsness knows that the 2020 policy provides coverage for Kabul's jet ski rental business regardless of the absence of a  schedule of individual jet skis.

**Adjustment of Prior Claims made under jet ski rental operations**

50. On November 20, 2020 a claim by claimant  Brendan Bryce (against Kabul) was reported and subsequently adjusted by Admiral under the 2020 policy regarding a "watercraft rented out by insured struck another watercraft injuring claimant." (See ECF #126-1, in the First Case (No.

2:22-cv-00177), and ECF #84-6 in the Second Case (No. 2:24-cv-0260), Bates Admiral_002424.)

51. The Brendan Bryce claim was covered.

52. The Brendan Bryce jet ski, like every jet ski rented by Kabul in 2020, was not on a schedule of jet skis for the 2020 policy because no schedule existed or does exist.

53. There was no inquiry as to what specific jet ski was rented. This was consistent with the grant of coverage in the **SPECIFIED OPERATIONS ENDORSEMENT** of the 2020 policy and the course of conduct between Admiral, Kabul, Eidsness, Nationwide and RT.

54. The coverage was for specified operations of jet ski rental--the business of renting jet skis, not the specific machines.

55. The complete 2020 policy contained no list of jet skis. *See ECF#91-4 in the Coverage Action(Case No. 2:22-cv-00177),Deposition of Staci Baratti, FRCP 30 (b) (6) representative, p. 21 line 14 through p. 22, line 11.* This error was caused by Admiral and RT. "The BOR is from the President of Kabul and the renewal Acords & Watercraft app are attached here.  Please let me know once we are confirmed as the Broker and if you need anything else to quote." (See ECF #126-2, p. 51 in the Coverage Action(Case No. 2:22-cv-00177), Admiral_000541 and Admiral_000548-000558 (no jet ski list in application): Application with no list of jet skis and email request to Admiral stating, "Please let me know…if you need anything else to quote"   This error was known and recognized by Admiral and RT but RT and Admiral concealed it from the insured and the Coverage Action Court. "Q. But that list on file with the company for the 2020 policy didn't actually exist, correct? A. Yes. Q. And that information was not communicated to Kabul that the list for the 2020 policy did not actually exist? A. It was not communicated to the insured by Admiral." (See ECF#91-4 in the Coverage Action(Case No. 2:22-cv-00177), Deposition of Staci Baratti FRCP 30 (b) (6) representative, p. 22 lns. 7 - 11.)

56. For issuance of the 2020 Policy, no watercraft, including the watercraft involved in the November 2020 Brendan Bryce claim, was on a schedule of jet skis that was on file with Admiral; but, consistent with the course of conduct, the earlier Brendan Bryce claim was accepted, adjusted and paid.

57. The insured act was "specified operation of jet ski rental." Which particular jet ski was involved was not material to the risk insured.

**The Lynch Incident, Claim and Lawsuit**

58. On August 21, 2020, Tammy Lynch was killed while a passenger on a jet ski rented from KABUL and operated by Daryl Alexander, when a drunk driver on another comapany's jet ski rearended them.

59. KABUL reported the incident to EIDSNESS, who advised that no claim needed to be filed at that time since no fault allegations had been made against KABUL.

60. On October 28, 2021, the Lynch family filed a lawsuit against KABUL alleging Kabul negligently rented the jet ski to Alexander.

61. Upon service of the Lynch Claim on November 6, 2021 (2:21-cv-01981-ART-DJA ECF No. 9) Kabul immediately provided the Lynch claim to Admiral through EIDSNESS on November 8, 2021

62. On December 3, 2020 Admiral retained Wolfe and Wyman to defend Kabul against the Lynch claim.

63. Wolfe and Wyman, in concert with ADMIRAL, failed to provide to Kabul the standard of care reasonably expected from a competent lawyer in similar circumstances.

64. This above short and plain statement of the factual basis for the following causes of action is supplemented (at the Court's request) by the following specific allegations that are not meant to be exhaustive, as this is just a pleading where discovery has not yet occurred.

**Additional Fraudulent Activities in Response to the Lynch Claim**

65. ADMIRAL, in concert with Armstrong Teasdale, RT, NATIONWIDE, and EIDSNESS, engaged in repeated and numerous criminal and insurance fraud alterations and misrepresentations of contract language to deny coverage, including but not limited to Admiral materially altering the 2020 policy to add an incomplete list (40 jet skis out of 158) of old jet skis to the application of the policy, RT and Admiral materially altering the 2021 Policy to require a jet ski schedule without KABUL's knowledge or consent, RT and Admiral not informing Kabul of the alteration of the 2021 policy, misrepresenting the lack of a jet ski schedule for the 2020 policy, fraudulently altering the 2020 policy to create an incomplete list of only 40 jet skis (Kabul had in excess of 100 jet skis during the relevant period), misrepresenting the content of jet ski schedules, misrepresenting the grant of coverage for the jet ski rental business.

66. ADMIRAL refused to update any schedule with the jet ski involved in the Lynch incident despite receiving lists which included all  information on the involved jet ski.  This was done with knowledge of its improper and fraudulent effect. On November 11, 2021 Admiral's Baratti is provided with signed waiver and information on YAMA3877C020 jet ski rented in the Lynch claim. On November 18, 2021, ADMIRAL's Baratti writes in the claim file:

> "So the UW [underwriter] and I went over the policy and she
> said that she did not write the prior policies 0r (sic) this term , just
> the renewal. Her renewal has a list of
> jet skis.This policy has a note that says please
> refer to prior policy for list of jet skis. It is not in the
> policy. She further stated that the
> list is not updated as the year goes by, if one is
> taken off or a new one is added. She realizes this
> is an issue because jet skis can be taken out of

commission for a variety of reasons and
replaced."(Admiral_002302)

67. ADMIRAL, in concert with Armstrong Teasdale, RT, NATIONWIDE, and EIDSNESS, fraudulently concealed information regarding the existence and method for updating any jet ski lists from Kabul in order to improperly deny coverage.

**Misrepresentations (Not Exhaustive, but specific allegations)**

68. ADMIRAL and Armstrong Teasdale fraudulently claimed there was a jet ski schedule on file for the 2020 policy in the reservation of rights letter, the complaint for declaratory relief and numerous court filings and representations, despite having no schedule of jet skis for the 2020 Policy and no reference to a jet ski schedule in the 2021 policy and receiving updates from KABUL.

69. On November 15, 2021, Admiral Underwriter conspiring with RT unilaterally alters the 2021 policy to insert the Boats Endorsement:

> "Will ensure the form reads 'Per schedule of Jet Ski & Boats – On file
> with our Company'. **Schedules were provided at the time of renewal so nothing
> is needed from insured's end.**" (Admiral_003425)

70. On 12/3/2021 ADMIRAL sent a reservation of rights to deny coverage, claiming that "Endorsement CG 24 12 11 85 Exclusion G but only for watercraft identified in the Schedule of Jet Skis on file with ADMIRAL."  At the time Admiral knew that there was no Schedule of Jet Skis for the 2020 policy on file with Admiral.  At the time Admiral knew that the partial 40 jet ski 2019 registrations could not possibly contain any of the 24 2020 jet skis contained on the only list of 2020 registrations with Admiral.  The list of 24 2020 registrations contains the 2020 registration for the YAMA3877C020 jet ski rented in the Lynch claim.

**ADMIRAL's Breach of Duty to Defend and Indemnify**

71. Failure to Defend. ADMIRAL had a duty to defend and indemnify KABUL and Alexander under the 2020 Policy, but failed to do so adequately.

72. On information and belief, ADMIRAL hired WOLFE & WYMAN to represent KABUL but prioritized ADMIRAL's interests over KABUL's, allowing WOLFE & WYMAN to neglect viable defenses.

**ADMIRAL's Litigation Tactics**

73. In initiating and pursuing Declaratory Relief Actions, ADMIRAL in conspiracy with RT, Nationwide, Eidsness and Armstrong Teasdale engaged in altering material policy provisions while actively keeping information from KABUL, filed a declaratory relief action to avoid its duties, misrepresenting policy terms and engaging in numerous acts violating Nevada and Arizona criminal law against forgery and the use of forged documents, in addition to violation of statutes related to good faith and fair dealing and ethical rules.

74. A policy of insurance that is altered after a claim is made and then relied upon in litigation to defeat a claim is a forged document.

75. Admiral's post-claim alteration of the 2020 Policy (by adding a purported schedule of jet skis that did not exist at issuance) and all Defendants' knowing publication, reliance, and use of that forged document in litigation constitutes forgery with the specific intent to defraud Kabul of coverage, thereby causing harm.

76. Admiral's reliance on a non-existent schedule with the cooperation of RT, Eidsness, & Nationwide is fraudulent and in violation of Arizona ARS 13–2002 (Forgery a class 4 felony) and Nevada NRS 205.090–205.110 (Forgery Category D felony) criminal laws.

77. **NRS 205.090. Forgery of conveyances, negotiable instruments, stock certificates, wills and other instruments; utterance of forged instrument** provides in pertinent part applicable to all defendants that: "A person who falsely… alters … any … contract… with the intent to damage or defraud any person … whether the person … resides in or belongs to this State or not,

or utters, publishes, passes or attempts to pass, as true and genuine, any of the above-named …
altered … matters, as above specified and described, knowing it to be … altered … with the
intent to prejudice, damage or defraud any person … whether the person … resides in this State
or not, is guilty of forgery, and shall be punished for a category D felony as provided in NRS
193.130."

78. ARS 13-2002. <u>Forgery; classification; definitions</u> provides the following applicable to all
defendants

"A. A person commits forgery if, with intent to defraud, the person:

1. Falsely … alters a written instrument; or

2. Knowingly possesses a forged instrument; or

3. Offers or presents, whether accepted or not, a forged instrument or one that contains
false information.

B. The possession of five or more forged instruments may give rise to an inference that the
instruments are possessed with an intent to defraud.

C. Forgery is a class 4 felony  …."

79. ARS 13-2001(12) applies to all defendants and defines "written instrument" as "any paper,
document or other instrument that contains written or printed matter or its equivalent."

80. The 2020 and 2021 insurance policies are contracts subject to the NRS forgery statutes.

81. The 2020 and 2021 insurance policies are written instruments subject to the ARS forgery
statutes.

82. ADMIRAL uttered and/or presented a letter titled "Reservation of Rights" on December 3,
2021, to KABUL.

83. The December 3, 2021 "Reservation of Rights" letter was prepared and presented by Armstrong Teasdale using documents known to be forged by ADMIRAL, acting in concert with RT and NATIONWIDE.

84. ADMIRAL settled the Lynch claim without KABUL's authorization and now improperly seeks reimbursement from KABUL, despite not pleading such claims, if they exist, and therfore waiving any claims.

**WOLFE & WYMAN's Conduct**

85. WOLFE & WYMAN breached their fiduciary duty to KABUL by failing to inform KABUL of conflicts of interest, independently evaluate liability, or pursue actions to inform or protect KABUL from the Lynch claims and ADMIRAL's claims.

## VIII. CAUSES OF ACTION

### FIRST CAUSE OF ACTION: EQUITABLE REFORMATION

86. KABUL incorporates all paragraphs by reference.

87. ADMIRAL, RT, NATIONWIDE, EIDSNESS and Kabul understood that Kabul was seeking and was provided with coverage for its "JET SKI RENTAL" operations and not for any individual jet skis.

88. The policy was understood by all parties to insure Kabul for its "JET SKI RENTAL" operations involving every jet ski Kabul owned and rented.

89. Kabul always provided the current registrations for the jet skis rented each year as they are received and prior to placing them in service to Admiral through Eidsness.

90. Eidsness provided them to Nationwide, who provided them to RT, who provided them to Admiral. This was the course of conduct.

91. On May 6, 2020, Lois Charron from Nationwide communicated with Jalene Nicholas of Admiral in order to get RT as the "double broker" on the "JET SKI RENTAL" Operations policy: "Is there any way to release this to RT based on the email below?  We do not want to go to the insured and retail agent as this is really a lot of extra work when the insured truly has no idea what a double broker is."

92. RT, through Davis McGregor, submitted the 2020 application to Keith Distel at Admiral on May 11, 2020: "Please let me know once we are confirmed as the Broker and if you need anything else to quote."

93.  The 2020 application prepared and submitted by RT contained no registrations for any jet skis.

94.  No one from Admiral noticed the lack of 2020 jet ski registrations and no one from Admiral requested further information about jet skis from RT, Nationwide, Eidsness or Kabul prior to issuing the 2020 policy.

95.  On May 11, 2020, Kieth Distel (an Admiral employee), in an internal communication with Roseann Nordin in underwriting for Admiral, asked Roseann to "let me know if you need anything else!"

96. On May 14, 2020, Admiral issued a binder for coverage to RT with two requests for other information but not requesting any 2020 jet ski registrations.

97.  On June 2, 2020, Admiral issued policy number CA000038462-01 to Kabul covering its "JET SKI RENTAL" operations from May 22, 2020 to May 22, 2021 with no associated schedule of jet skis on file with Admiral.

98.  No schedule of individual jet skis ever existed for the 2020 policy.  "Q. But that list on file with  the company for the 2020 policy didn't actually exist, correct? A. Yes." (Case No.

2:22-cv-00177), Deposition of 30 (b) (6) designee Staci Baratti,  p. 21, ln 14 through p. 22, ln 11; "Q No list of specific jet skis was created or made a part of the 2020 policy, correct?   A. Correct." *Id.* at p. 35, lns. 19-21.

99.   This was a mutual mistake made because the number, year, condition or other specifics of the jet skis owned and rented by Kabul was not material to the risk insured of Kabul's jet ski rental operation.

100.   The only material item, subject and subjected to audit, was gross revenue from Kabul's "JET SKI RENTAL" operations. (Kabul had other general liability coverage for the convenience store/gas station operations.)

101.   Following issuance of the policy, and prior to the Lynch incident, Kabul submitted a group of twenty-four(24) 2020 jet ski registrations to Eidsness,  consistent with the course of conduct.

102.. Eidsness admits, through its employee Stephany Hawk, that all of the twenty-four(24) jet skis purchased in 2020, including the jet ski rental in the Lynch claim, were provided to Eidsness by Kabul in 2020. *(See  ECF No. 128-7 in the First Case (No. 2:22-cv-00177) as Exhibit 5, "The insured always provides us a copy of the new registrations every year…" at Bates Admiral_002189; and, ECF No. 84-15 in the Second Case (No. 2:24-cv-0260) at page 3 of 13, Bates Admiral_002189-2199.)*

103.   The list of twenty-four(24) 2020 registrations contains the 2020 registration for the YAMA3877C020 jet ski rented in the Lynch claim.  *Id.* at Admiral_000813  & 000814.

104.   Following presentment of the Lynch claim, Admiral realized it made mistakes in both the 2020 and 2021 policies.

105.   Confirming its knowledge of the mistakes and the need to reform the policy to effectuate the intent of the parties, Admiral undertook to correct the mistakes and alter the policies; but, Admiral failed to consult the insured.

106.   Although the timing is unclear,[1] Admiral altered the 2020 policy by unilaterally adding an incomplete list of (40 out of 158) 2019 jet ski registrations from the 2019 application.   The Admiral adjuster on the Lynch claim, Stacie Baratti, states under oath on April 20, 2023: "The underwriting file contained a list of 40 jet skis on file with Admiral from the 2019-2020 policy. I was told by the underwriter that this was the list of jet skis on file with Admiral for the Policy." (ECF No. 76-1 Declaration of Stacie Baratti, April 23, 2023, at paragraph 10, p. 3 lines 2&3.)

107.   The alterations attempted by Admiral confirm that the policy must be reformed, but Admiral failed to reasonably correct the mistake discovered in the 2020 policy to effectuate the true intent of both parties: to insure Kabul's "JET SKI RENTAL" operation for all jet skis owned and rented by Kabul.

108. On December 1, 2021 Eidsness requested the policy be reformed to include at least the twenty-four(24) 2020 registrations received from Kabul in May and June of 2020.  "I am also trying to get this corrected on his policy. I have attached the invoices and registrations so that you can see the time frame and hopefully that it makes sense to you that they should have been on the policy the entire time."  (Admiral_000805-000815 2021-12-01 S Hawk email w/ 2020  jet ski additions (1) at Admiral_000805)

109. The 2020 policy should be reformed to add the twenty-four (24) 2020 registrations including the 2020 registration for the YAMA3877C020 jet ski rented in the Lynch claim to the 2020 schedule of jet skis on file with the company as requested by Eidsness in 2021.

---

[1] Failure to properly time stamp actions on an insurance policy is an additional breach of the affirmative duty of good faith and fair dealing

110. Without reformation, the policy as written and interpreted by the declaratory judgment[2] in Case No. 2:22-cv-00177 is illusory as all coverage contracted for the specific operation of "JET SKI RENTAL" is voided because no jet ski rented during the policy term appeared on the mistakenly not forwarded to Admiral schedule of jet ski 2020 registrations.

**SECOND CAUSE OF ACTION: BREACH OF CONTRACT**
**(Against ADMIRAL, RT, NATIONWIDE, EIDSNESS,**
**WOLFE & WYMAN and ARMSTRONG TEASDALE)**

111. KABUL incorporates all paragraphs by reference.

112. The 2020 Policy was a valid contract under which ADMIRAL agreed to defend and indemnify KABUL for its "JET SKI RENTAL" operations.

113. Kabul performed under the 2020 policy by paying the premium, giving notice of loss and providing all information requested of Kabul.

114. ARMSTRONG TEASDALE aided ADMIRAL in breaching the contract by the specific acts alleged above, including but not limited to, the preparation and publishing of the reservation of rights letter which contained false statements of fact which ARMSTRONG TEASDALE knew were false.

115. ADMIRAL breached this contract by material failure to perform in conspiracy with ARMSTRONG TEASDALE by failing to properly defend KABUL; denying coverage on fraudulent grounds, based on an altered application, based on misrepresentations of policy terms, failure to correct a mutual mistake; and by perpetrating a fraud and abuse of process on Kabul and the court in conspiracy between Armstrong Teasdale, Admiral, Eidsness, Nationwide and RT in order to utter, use, publish and pass forged documents to damage Kabul.

---

[2] Kabul has appealed that decision and in no way agrees the decision is sound, valid or not subject to collateral and direct attack none of which is waived by arguing in the alternative its effect which gives rise to the need for reformation.

116. Admiral, Armstrong Teasdale, RT, Eidsness and National had, in their possession, five or more altered documents which give rise to an inference that the instruments were possessed with the intent to defraud KABUL and the Court, including but not limited to the following: 1) The altered 2020 policy adding the incomplete 2019 40 jet ski list;  2) The altered 2020 policy with an added incomplete 2021 list; 3)   The altered  2021 policy with the boats endorsement added; 4)  The altered 2021 policy with the 2020 jet ski registrations removed; 5)  The reservation of rights letter prepared by ARMSTRONG TEASDALE sent on December 3, 2021, which claimed the "watercraft at issue in the Lynch Complaint, a 2020 Yamaha PWC Hull ID #YAMA3877C020, was not identified in any Schedule of Jet Skis on file with Admiral" when it is undisputed that the only Schedule of jet skis in Admiral's files with 2020 registrations contained the  YAMA3877C020 jet ski rented in the Lynch Complaint.

117. Nationwide, together with Eidsness, presented information from a forged or non-existent list on file with Admiral alleged to be connected to the 2020 policy. Eidsness and Nationwide claimed a list with Admiral contained all of the 2020 jet skis on the May 8, 2020 list (9 jet skis) and June 11, 2020 list (7 jet skis), but none of the 2020 jet skis on the June 25, 2020 (8 jet skis).

118. The Court relied on this testimony in granting relief to Admiral, causing damage to Kabul.

119. Admiral, RT, Nationwide, Armstrong Teasdale and Eidsness committed perjury by alleging or publishing that the 2020 policy covered vessels. The grant of coverage for Kabul's specified operations of "JET SKI RENTAL" covered Kabul's rental activities and did not cover any vessels.

120. KABUL had a contract with EIDSNESS, who contracted on KABUL's behalf with NATIONWIDE and RT to obtain coverage for KABUL's specified operation of "JET SKI RENTAL."

121. KABUL also had a direct written contract with RT entered on May 11, 2020 for RT to obtain coverage for KABUL's specified operation of "JET SKI RENTAL."

122. KABUL performed all required tasks including furnishing all requested information and paying a premium for policies of insurance to cover its specified operation of "JET SKI RENTAL."

EIDSNESS, NATIONWIDE and RT breached the contract with Kabul by failing to procure coverage for Kabul's "JET SKI RENTAL" operation.

123. Kabul suffered damage on January 8, 2026,when the court entered summary judgment against Kabul. Case No. 2:22-cv-00177 (ECF No. 188).

124. Kabul may suffer further damages in this litigation for which EIDSNESS, NATIONWIDE and RT must indemnify KABUL because those damages are a result of the breach of contract of EIDSNESS NATIONWIDE and RT in failing to procure the promised coverage.

125. Admiral breached the insurance contract in its hiring and direction of the defense through Wolfe and Wyman.

126. Wolfe and Wyman had an independent contract to represent Kabul.

127. Kabul performed its duties with respect to its representation by WOLFE and WYMAN by cooperating in the defense and responding with information as requested.

128. Wolfe and Wyman breached the duty of care owed by Wolfe and Wyman to Kabul as directed by Admiral including but are not limited to the following: 1)Failing to utilize available defenses to the Lynch Claim including but not limited to a motion to dismiss; 2)Failing to file proper pleadings and processes to effectuate the limitation of liability of Kabul to the value of the vessel under admiralty law 46 U.S.C. 30501-30512; 3) Failing to protect Kabul in the settlement paid on behalf of Admiral and Alexander in concert with Admiral Wolfe and Wyman's joint

client; 4) Failing to disclose to Kabul the nature of the conflict between Admiral and Kabul and get Kabul's informed consent to the joint representation; 5) Failing to fully protect Kabul in the negotiation, settlement and release of the Lynch claim; 6) Failing to inform Kabul of Admiral's intent to pursue reimbursement of the voluntary payment Admiral made on its own behalf and Alexander's behalf because Admiral failed to defend Alexander; 7) Failing to obtain in the settlement from the Lynch plaintiff an allocation of liability between Kabul and Alexander or an admission of non-liability on the part of Kabul.

129. As a result of the breaches of contract, KABUL suffered damages, including attorney fees, increased premiums, loss of goodwill, financial losses, lost profits and loss of business opportunities.

130. As a result of Admiral's breaches of contract, Admiral is liable for all damages suffered by Kabul from the two cases filed against it by Admiral, the disruption of its business and loss of revenue, increased insurance costs, and attorney fees and costs.

131. The breaches of contract by WOLFE & WYMAN, EIDSNESS, NATIONWIDE and RT proximately caused damages to Kabul of loss of coverage, disruption of its business and loss of revenue, increased insurance costs, and attorney fees and costs and must indemnify Kabul for all damages, if any awarded to Admiral in this lawsuit.

### THIRD CAUSE OF ACTION:
### BREACH OF THE COVENANT OF GOOD FAITH AND FAIR DEALING
### (Against ADMIRAL, RT, NATIONWIDE, EIDSNESS,
### WOLFE & WYMAN and ARMSTRONG TEASDALE)

132. KABUL incorporates all paragraphs by reference.

133. Every contract, and especially insurance related contracts, are subject to the implied covenant of affirmative good faith and fair dealing.

134. Each of the defendants   ADMIRAL, RT, NATIONWIDE, EIDSNESS, WOLFE & WYMAN and ARMSTRONG TEASDALE owed KABUL a duty of affirmative good faith and fair dealing.

135. This duty was breached by the denial of benefits under the policy with both an actual and an implied awareness that there was no reasonable basis supporting its decision as follows:

136. As set forth throughout this pleading, ADMIRAL, RT, NATIONWIDE, EIDSNESS, WOLFE & WYMAN and ARMSTRONG TEASDALE had actual knowledge that the policy covered Kabul's "JET SKI RENTAL" operations pursuant to the specified operations endorsement of the 2020 policy.

137. As set forth throughout this pleading, ADMIRAL, RT, NATIONWIDE, EIDSNESS, WOLFE & WYMAN and ARMSTRONG TEASDALE failed to do a proper investigation into the issuance of the policy or take reasonable steps to correct the mutual mistake that created an illusory contract inconsistent with the intent of the parties to insure Kabul's "JET SKI RENTAL" operations.

138. A reasonable investigation would have demonstrated there was no reasonable basis to decline coverage for Kabul's "JET SKI RENTAL" operations; this gives each of the parties an implied awareness that there is no reasonable basis to decline coverage.

139. As set forth throughout this pleading, ADMIRAL, RT, NATIONWIDE, EIDSNESS, WOLFE & WYMAN and ARMSTRONG TEASDALE engaged in fraudulent activities including forgery, utilizing forged documents and perjury to obtain a void and narrow judgment on policy language.

140. A policy of insurance that is altered after a claim is made and then relied upon in litigation is a forged document and Defendants' knowing publication, reliance, and use of that forged document in litigation is a breach of the covenant of good faith and fair dealing.

141. The use of forged documents and perjury as the basis to avoid insurance coverage is actual awareness that there is no reasonable basis supporting denial of coverage.

142. The duty of affirmative good faith and fair dealing was breached by contractual breaches, as set forth in this pleading, that are expanded by the fiduciary like duties of affirmative disclosure, good faith evaluations and fair dealing.

143. Engaging in forgery of insurance policies breaches the affirmative duty of good faith and fair dealing; but, inadequate investigation and failure to disclose facts to the insured that do not reach the level of forgery are likewise actionable. These include but are not limited to: Publishing forged documents; Misrepresenting policy terms; Failing to investigate; Violating statutory standards as set forth in the fourth cause of action; and Failing to defend properly.

144. As a result of the foregoing allegations, KABUL suffered damages, including attorney fees, increased premiums, loss of goodwill, financial losses, lost profits and loss of business opportunities.

145. These actions and inactions detailed herein were oppressive and malicious, including but not limited to knowingly fabricating policy language, attachments, misrepresentations of coverage, false allegations, false testimony, false arguments, perjury, subornation of perjury, abuse of process, filing and maintaining multiple lawsuits without jurisdiction entitling KABUL to punitive damages.

**FOURTH CAUSE OF ACTION: VIOLATION OF NRS 686A.310**
**(UNFAIR CLAIMS PRACTICES)**
**(Against ADMIRAL)**

146. KABUL incorporates all paragraphs by reference.

147. In addition to the allegations delineated throughout this pleading, ADMIRAL violated NRS 686A.310 by:

(a) Misrepresenting to Kabul and the Court pertinent facts and insurance policy provisions relating to the coverage of Kabul's specified operations coverage for its "JET SKI RENTAL" operations. These specific misrepresentations are set forth in detail but in summary they include but are not limited to: coverage of Kabul's specified operations coverage for its "Jet Ski Rental" operations was voided entirely by failing to provide a schedule of jet skis at the policy inception; that the policy covered any vessels; that there was a schedule of jet skis for the 2020 policy to verify individual jet skis with; that a schedule of jet skis was required for any coverage under the 2020 policy; That on 11/30/2021 the Admiral adjuster Baratti writes to EIDSNESS: "The jet ski was a 2020 Yamaha ID YAMA3877C020 that is was/is (sic) not listed on the schedule of the policy in effect on the DOL."

(b) Failing to acknowledge and act reasonably promptly upon communications with respect to claims arising under insurance policies. Kabul requested information and actions from Admiral that were not responded to reasonably promptly including but not limited to Kabul requested making an offer of judgment in the Lynch claim which Admiral failed to promptly respond to and Eidsness requested reformation of the policy to add jet skis and Admiral failed to respond.

(c) Failing to adopt and implement reasonable standards for the prompt investigation and processing of claims arising under the 2020 insurance coverage of Kabul's specified operations coverage for its "JET SKI RENTAL" operations. Instead of reasonably

evaluating the policy language and grant of coverage Admiral created issues by forgery to defeat rather than provide coverage.

(d) Failing to affirm or deny coverage within a reasonable time and then forging documents in order to defeat coverage.

(e) Failing to effectuate prompt, fair and equitable settlements of claims in which liability of the insurer has become reasonably clear.  Admiral delayed settlement by forgery and then sought to bring an action without jurisdiction for waived amounts of improper defense costs and voluntary  payments made to protect Admiral and Alexander and not Kabul.

(f) Compelling Kabul to institute litigation to recover amounts due under the 2020 insurance policy by bringing an action against Kabul based on forged documents to cure a mutual mistake and delaying the settlement of the claims against Kabul and failing to vigorously defend against the Lynch action.

(g) Admiral attempted to settle the claim by forcing Kabul to contribute to the voluntary payment made by Admiral to protect Admiral from its failure to defend Alexander.

(h) Attempting to settle claims on the basis of an application which was altered without notice to, or knowledge or consent of, the insured, or the representative, agent or broker of the insured.  Admiral throughout the Lynch claim has used the 2020 policy based off of the altered application wherein at some unknown point Admiral unilaterally added a partial list of 40 jet ski registered in 2019 to the application for the 2020 policy.

(i) Admiral failed upon payment of the claim, on behalf of Alexander to inform Kabul of the coverage under which the payment was made.

(n) Admiral failed to provide promptly to Kabul a reasonable explanation of the basis in the insurance policy, with respect to the facts of the insured's claim and the applicable law, for the denial of the claim or for an offer to settle or compromise the claim.

148. As a result of Admiral's actions, KABUL suffered damages, including attorney fees, increased premiums, loss of goodwill, financial losses, lost profits and loss of business opportunities.

149. These actions and inactions, as detailed herein, were oppressive and malicious including but not limited to knowingly fabricating policy language, attachments, misrepresentations of coverage, false allegations, false testimony, false arguments, perjury, subornation of perjury, abuse of process, filing and maintaining multiple lawsuits without jurisdiction entitling KABUL to punitive damages.

## FIFTH CAUSE OF ACTION: FRAUD
### (Against ADMIRAL, ARMSTRONG TEASDALE, NATIONWIDE, RT)

150. KABUL incorporates all paragraphs by reference.

151. As set forth throughout this pleading, ADMIRAL, ARMSTRONG TEASDALE, NATIONWIDE and RT knowingly created forged documents, published forged documents and presented or gave perjured testimony regarding policy terms and the existence, content and necessity of a jet ski schedule to numerous to list in detail in this pleading but they were repeated throughout case number  2:22-cv-00177-CDS-NJK to obtain the void judgment, including but not limited to the following:

**ADMIRAL**

A.    The reservation of rights letter sent to Kabul by Admiral employee Stacie Baratti on December 3, 2021 which claimed the "watercraft at issue in the Lynch Complaint, a 2020 Yamaha PWC Hull ID #YAMA3877C020, was not identified in any Schedule of Jet Skis

on file with Admiral" when it is undisputed that the only Schedule of jet skis in Admiral's files with 2020 registrations contained the YAMA3877C020 jet ski rented in the Lynch Complaint.

B.    Admiral Representative, Stacie Baratti, in case 2:22-cv-00177-CDS-NJK, ECF No. 76-1, on April 20, 2023, gave perjured testimony to the court relying on the forged 2020 policy that Admiral altered by unilaterally adding an incomplete list of (40 out of 158) 2019 jet ski registrations from the 2019 application.

**ARMSTRONG TEASDALE**

A.    Tracy A. Difillippo of ARMSTRONG TEASDALE prepared the reservation of rights letter sent on December 3, 2021 to Kabul which claimed the "watercraft at issue in the Lynch Complaint, a 2020 Yamaha PWC Hull ID #YAMA3877C020, was not identified in any Schedule of Jet Skis on file with Admiral" when it is undisputed that the only Schedule of jet skis in Admiral's files with 2020 registrations contained the YAMA3877C020 jet ski rented in the Lynch Complaint.

B.    Tracy A. Difillippo of ARMSTROMG TEASDALE prepared and filed the declaration of Stacie Baratti in case 2:22-cv-00177-CDS-NJK ECF No. 76-1 on Aril 20, 2023 presenting perjured testimony to the court relying on the forged 2020 policy Admiral altered by unilaterally adding an incomplete list of (40 out of 158) 2019 jet ski registrations from the 2019 application.

**NATIONWIDE**

On information and belief, Lois Charron of Nationwide communicated to Stephany Hawk of Eidsness in November of 2021 that there was a schedule of jet skis with Admiral for the 2020 policy that contained some but not all of the 24 2020 registrations including the 2020

registration for the YAMA3877C020 jet ski rented in the Lynch claim to the 2020 schedule of jet skis. (29. Deposition of Stephany hawk p. 41 lines 3 through 14 and page 60 lines 20-22.) This was false the genuine 2020 policy contained no list of jet ski registrations on file with Admiral and the forged 2019 list contained no 2020 registrations.

**RT**

On November 15, 2021, Admiral Underwriter Monika Mezyk, conspiring with RT's Bill Wardius, unilaterally alters (forges) the 2021 policy to insert the Boats Endorsement:

"Will ensure the form reads 'Per schedule of Jet Ski & Boats – On file with our Company'. **Schedules were provided at the time of renewal so nothing is needed from insured's end.**" (Admiral_003425)

152. KABUL and the Court relied on these fraudulent statements causing damages to Kabul, including attorney fees, costs, increased premiums, loss of goodwill, financial losses, lost profits and loss of business opportunities.

153. These actions and inactions detailed herein were fraudulent, oppressive and malicious including but not limited to knowingly fabricating policy language, attachments, misrepresentations of coverage, false allegations, false testimony, false arguments, perjury, subornation of perjury, abuse of process, filing and maintaining multiple lawsuits without jurisdiction entitling KABUL to punitive damages.

**SIXTH CAUSE OF ACTION: LEGAL MALPRACTICE**
**(Against WOLFE & WYMAN)**

154. KABUL incorporates all paragraphs by reference.

155. WOLFE & WYMAN was retained to represent KABUL, had an attorney-client relationship with KABUL and owed a duty of care as its legal representatives to act with the skill, prudence, and diligence that a reasonably competent attorney would under similar circumstances.

156. Wolfe & Wyman breached this duty and failed to meet the requisite standard of care by, among other actions: Failing to act in KABUL's best interests; Failing to inform KABUL of viable defenses and conflicts of interest; Not properly evaluating and pursuing available defenses; Failing to consult with KABUL and properly document settlement liability between KABUL and Alexander; Allowing ADMIRAL to control the defense to KABUL's detriment, allowing the time for bringing a limitation action on behalf of Kabul to limit Kabul's exposure to the Lynch claim to the value of the vessel.

157. As a result of the breach, KABUL suffered damages, including attorney fees, increased premiums, loss of goodwill, financial losses, lost profits and loss of business opportunities.  All damages awarded to Admiral, if any, in this lawsuit should be indemnified by WOLFE & WYMAN.

### SEVENTH CAUSE OF ACTION: CIVIL CONSPIRACY
### (Against ADMIRAL, ARMSTRONG TEASDALE,  NATIONWIDE, RT)

158. KABUL incorporates all preceding paragraphs by reference.

159. Defendants ADMIRAL, ARMSTRONG TEASDALE,  NATIONWIDE, RT conspired to deny KABUL coverage through concerted action involving fraud, criminal forgery, perjury, as set forth specifically in this complaint with dates and the parties involved to accomplish the unlawful objective of denying Kabul the benefit of the insurance contract.

160.  These actions included all of the actions throughout this pleading including but not limited to   Nationwide and RT (through Bill Wardus), and Admiral (through Monika Mezyk) communicated with each other on November 15, 2021 to modify the 2021 policy to require a schedule  of jet skis, where none was required in the policy when issued.

161.  This was done to enable the denial of the Lynch claim.

162.  ADMIRAL specifically instructed RT to not notify the insured.

163.   ARMSTRONG TEASDALE then used this forged document (the policy) and other forged documents and perjured testimony to draft the reservation of rights letter and the declaratory relief complaint and maintain the declaratory relief complaint to take coverage away from Kabul.

164.   The civil conspiracy caused Kabul damages, including attorney fees, increased premiums, loss of goodwill, financial losses, lost profits and loss of business opportunities.

165.   These actions and inactions detailed herein were fraudulent, oppressive and malicious including but not limited to knowingly fabricating policy language, attachments, misrepresentations of coverage, false allegations, false testimony, false arguments, perjury, subornation of perjury, abuse of process, filing and maintaining multiple lawsuits without jurisdiction entitling KABUL to punitive damages.

**EIGHTH CAUSE OF ACTION: ABUSE OF PROCESS**
**(Against ADMIRAL and Armstrong Teasdale)**

166. KABUL incorporates all preceding paragraphs by reference.

167. As set forth throughout this pleading in detail Defendants Armstrong Teasdale and Admiral engaged in improper litigation activities with the ulterior purpose of causing financial hardship for Kabul in hopes of causing Kabul to abandon his claim and force a settlement paid by him.

168.   This was accomplished and maintained by the willful acts of  perjury by Admiral, subornation of perjury by ARMSTRONG TEASDALE, insurance fraud, lack of jurisdiction, bringing an action with unclean hands, maintaining this action after obtaining a final judgment in a prior action where these claims could have been presented which precludes theses claims from being brought in this action.

169. Admirals claims were waived by failing to request relief in the first action, the claims for reimbursement are inconsistent with the contractual duties and the duty of affirmative good faith and fair dealing under the insurance contract, the reimbursement claims were not properly

reserved in the reservation of rights letter and the first reimbursement action,   claim splitting, forum shopping and other acts, to deny KABUL coverage and obtain money from Kabul.

170.  ADMIRAL has demanded KABUL pay ADMIRAL in excess of $750,000 on a claim that could have been limited to less than $10,000 the value of the vessel.

171.  Admiral would not authorize an offer of judgment in the LYNCH action without Kabul contributing the entire amount.

172. ADMIRAL, in conspiracy with Armstrong Teasdale, engaged in altering material policy provisions while actively keeping information from Kabul, filed a declaratory relief action to avoid its duties, misrepresenting policy terms and engaging in numerous acts violating Nevada and Arizona criminal law against forgery and the use of forged documents.

173.  As a result, KABUL suffered damages, including attorney fees, increased premiums, loss of goodwill, financial losses, lost profits and loss of business opportunities.

These actions and inactions detailed herein were fraudulent, oppressive and malicious including but not limited to knowingly fabricating policy language, attachments, misrepresentations of coverage, false allegations, false testimony, false arguments, perjury, subornation of perjury, abuse of process, filing and maintaining multiple lawsuits without jurisdiction entitling KABUL to punitive damages.

### NINTH CAUSE OF ACTION: RACKETEERING (NRS 207.470)
### (Against ADMIRAL, ARMSTRONG TEASDALE,  NATIONWIDE, RT)

174. KABUL incorporates all preceding paragraphs by reference.

175.   Admiral's creation and reliance on a non-existent schedule in concert with ARMSTRONG TEASDALE RT & NATIONWIDE is fraudulent and violation of Arizona ARS 13–2002 (Forgery a class 4 felony) and Nevada NRS 205.090–205.110 (Forgery Category D felony) criminal laws.

176. **NRS 205.090**   Forgery of conveyances, negotiable instruments, stock certificates, wills and other instruments; utterance of forged instrument  provides in pertinent part applicable to all defendants that: "A person who falsely… alters … any … contract… with the intent to damage or defraud any person … whether the person … resides in or belongs to this State or not, or utters, publishes, passes or attempts to pass, as true and genuine, any of the above-named … altered … matters, as above specified and described, knowing it to be … altered … with the intent to prejudice, damage or defraud any person … whether the person … resides in this State or not, is guilty of forgery, and shall be punished for a category D felony as provided in NRS 193.130."

177.   ARS 13-2002. <u>Forgery; classification; definitions</u> provides the following applicable to all defendants

"A. A person commits forgery if, with intent to defraud, the person:

1. Falsely … alters a written instrument; or

2. Knowingly possesses a forged instrument; or

3. Offers or presents, whether accepted or not, a forged instrument or one that contains false information.

B. The possession of five or more forged instruments may give rise to an inference that the instruments are possessed with an intent to defraud.

C. Forgery is a class 4 felony  …."

178.  ARS 13-2001(12) applies to all defendants and defines "written instrument" as "any paper, document or other instrument that contains written or printed matter or its equivalent."

179.  The 2020 and 2021 insurance policies are contracts subject to the NRS forgery statutes.

180.  The 2020 and 2021  insurance policies are written instruments subject to the ARS forgery statutes.

181.  Admiral and ARMSTRONG TEASDALE uttered and/or presented a letter titled "Reservation of Rights" on December 3, 2021, to Kabul.

182.   The December 3, 2021 "Reservation of Rights" letter was prepared and presented by ARMSTRONG TEASDALE using documents known to be forged by Admiral acting in concert with RT and NATIONWIDE.  As set forth in detail in this pleading.

183.  Under both Nevada and Arizona law, each forgery is a separate criminal offense.

184. As set forth throughout this pleading there are at least five separate and distinct forgeries, some by Admiral acting alone, some by Admiral acting in concert with RT and NATIONWIDE.

185. All of these forged documents have been presented to the court on occasions too numerous to list by ARMSTRONG TEASDALE.

186.  Under both Nevada and Arizona law, each use of a forged document is a separate criminal offense.

187.  All defendants have published and maintained their claims and defenses through the use of forged documents, each of which is a separate criminal offense of forgery.

188. Defendants engaged in a pattern of racketeering activity, of forgery, perjury, insurance fraud, and other predicate acts, to deny KABUL coverage including but not limited to: Representing that there was a list of jet skis associated with the 2020 policy in the reservation of rights letter, court filings and affidavits prepared by Armstrong Teasdale; Modifying the 2021 policy through RT without the knowledge and consent of Kabul in November of 2021 in order to fraudulently require a list on the 2021 policy and fraudulently not listing the involved jet ski, which Admiral had in its file on the contemporaneously created 2021 list; Armstrong Teasdale

made false statements to the court and knowingly offered false testimony that the jet ski was not on the 2021 list of jet skis.

189. Admiral, Armstrong Teasdale, RT and National had in their possession five or more altered documents which gives rise to an inference that the instruments were possessed with the intent to defraud KABUL and the Court including but not limited to the following: The altered 2020 policy adding the incomplete 40 jet ski list, The altered 2020 policy with an added incomplete 2021 list, The altered 2021 policy with the boats endorsement added, The altered 2021 policy with the 2020 jet ski registrations removed, The reservation of rights letter prepared by ARMSTRONG TEASDALE sent on December 3, 2021, which claimed the "watercraft at issue in the Lynch Complaint, a 2020 Yamaha PWC Hull ID #YAMA3877C020, was not identified in any Schedule of Jet Skis on file with Admiral" when it is undisputed that the only Schedule of jet skis in Admiral's files on December 3, 2021 with 2020 registrations contained the YAMA3877C020 jet ski rented in the Lynch Complaint.

190. Nationwide, together with Eidsness, presented information from a forged or non-existent list on file with Admiral alleged to be connected to the 2020 policy. Eidsness and Nationwide claimed a list with Admiral contained all of the 2020 jet skis on the May 8, 2020 list (9 jet skis) and June 11, 2020 list (7 jet skis) but none of the 2020 jet skis on the June 25, 2020 (8 jet skis).

191. The Court relied on this testimony in granting relief to Admiral causing damage to Kabul.

192. Admiral, RT, Nationwide, Armstrong Teasdale and Eidsness committed perjury by alleging or publishing that the 2020 policy covered vessels. In fact, the grant of coverage for Kabul's specified operations of "Jet Ski Rental" covered Kabul's rental activities and did not cover any vessels.

193. Kabul did not participate in any of the predicate acts.

194. The predicate RICO acts listed above proximately caused KABUL to suffer damages, including attorney fees, increased premiums, loss of goodwill, financial losses, lost profits and loss of business opportunities.

195. These actions and inactions detailed herein were fraudulent, oppressive and malicious including but not limited to knowingly fabricating policy language, attachments, misrepresentations of coverage, false allegations, false testimony, false arguments, perjury, subornation of perjury, abuse of process, filing and maintaining multiple lawsuits without jurisdiction entitling KABUL to punitive damages.

196. KABUL is entitled to treble damages under NRS 207.470.

**TENTH CAUSE OF ACTION:  NEGLIGENCE**
**(Against ADMIRAL, RT, NATIONWIDE, EIDSNESS, WOLFE & WYMAN)**

197. KABUL incorporates all preceding paragraphs by reference.

198. Defendants owed KABUL a duty of care in discharging contractual duties to perform the contract with a reasonable degree of skill and competence.

199. Defendants breached their duties by failing to update jet ski schedules, misrepresenting policy terms to Plaintiff, Claimants, other Defendants and the Court and failing to defend KABUL adequately, as detailed throughout this pleading.

200. As a result of the numerous breaches, KABUL suffered damages, including adverse judgment, attorney fees, increased premiums, loss of goodwill, financial losses, lost profits and loss of business opportunities.

**IX. PRAYER FOR RELIEF**

WHEREFORE, KABUL prays for judgment against Defendants as follows:

1. Reformation of the 2020 policy;

2. Indemnity for losses under the policy, including damages, attorney fees, interest, and lost income in an amount exceeding $15,000.00;

3. Breach of Contract Damages against ADMIRAL, including attorney fees estimated at $150,000 and increased insurance premiums of approximately $200,000, with leave to amend upon discovery;

4. Attorney Fees and Costs incurred in responding to Defendants' actions, exceeding $15,000.00.

5. General Damages exceeding $15,000.00;

6. Special Damages for indemnity from any judgments against KABUL, plus consequential damages, costs, interest, and attorney fees;

7. Reimbursement of all attorney fees and costs incurred defending ADMIRAL's declaratory relief actions;

8. Equitable Relief requiring Defendants, Armstrong Teasdale, EIDSNESS, NATIONWIDE, RT and WOLFE & WYMAN to indemnify KABUL for any damages obtained by Admiral together with KABUL's attorney fees and costs;

9. Punitive and Exemplary Damages exceeding $15,000.00.

10. Treble Damages pursuant to NRS 207.470;

11. That the judgment be declared void;

12. Attorney Fees and Costs of suit;

13. Additional Relief as the Court deems just and proper.

DATED this 5th day of March, 2026.

                    Christensen Law Offices, LLC
                    _/s/Thomas Christensen_____
                    Thomas Christensen, Esq.
                    Nevada Bar #2326
                    1000 S. Valley View Blvd.
                    Las Vegas, NV 89107
                    PH: 702-870-1000
                    courtnotices@injuryhelpnow.com