# Document 8

TRACY A. DIFILLIPPO, ESQ.
Nevada Bar No. 7676
ARMSTRONG TEASDALE LLP
7160 Rafael Rivera Way, Suite 320
Las Vegas, Nevada 89113
Telephone: 702.678.5070
Facsimile: 702.878.9995
tdifillippo@atllp.com
malarie@atllp.com

*Attorneys for Plaintiff Admiral Insurance Company*

**UNITED STATES DISTRICT COURT**

**DISTRICT OF NEVADA**

| | |
|---|---|
| ADMIRAL INSURANCE COMPANY,<br><br>Plaintiff,<br><br>vs.<br><br>KABUL, INC. d/b/a FASTRIP PWC RENTALS, KABUL, INC. d/b/a FASTRIP FOOD STORE, DARRYL PETER ALEXANDER, JR., individually, TOMMY LYNCH, as ADMINISTRATOR for the ESTATE OF TAMMY LYNCH, and TOMMY LYNCH and APRIL BLACK, individually as heirs of TAMMY LYNCH<br><br>Defendants. | Case No.: 2:22-cv-00177-JAD-NJK<br><br>**ADMIRAL INSURANCE COMPANY'S MOTION FOR SUMMARY JUDGMENT** |
| KABUL, INC dba FASTRIP PWC and FASTRIP FOOD STORE,<br><br>Third-Party Plaintiff,<br><br>v.<br><br>GREGG EIDSNESS FARM BUREAU FINANCIAL SERVICES, DOES I through X, inclusive; and ROE CORPORATIONS I through X, inclusive,<br><br>Third-Party Defendant | |
| AND ALL RELATED CLAIMS | |

/ / /

Plaintiff Admiral Insurance Company ("Admiral"), by and through its counsel, Armstrong Teasdale LLP, hereby submits the following motion for summary judgment seeking an order from this Court declaring that (1) Admiral has no duty to defend or indemnify Defendant Kabul , Inc. dba Fastrip PWC and Kabul, Inc. dba Fastrip Food Store ("Kabul"); and (2) Admiral has no duty to defend or indemnify Darryl Alexander ("Alexander") for the underlying complaint filed in the United States District Court of Nevada, Case No. 2:21-cv-01981-JAD-DJA ("Lynch Complaint").

**MEMORANDUM OF POINTS AND AUTHORITIES**

## I. INTRODUCTION

This declaratory relief action arises out of Kabul's and Alexander's request for coverage under the Admiral insurance policy for the Lynch Complaint. Admiral agreed to defend Kabul and Alexander under reservation of rights and filed the declaratory relief action to seek a determination on whether there is duty to defend and indemnify Kabul and Alexander.

The Lynch Complaint alleges that Tammy Lynch was a passenger on a jet ski owned by Kabul and rented to Alexander. The Lynch Complaint also alleges that Kabul was negligent in entrusting the watercraft to Alexander, failed to instruct or warn Alexander in the safe and proper operation of the watercraft, and failed to operate the watercraft in a safe and proper manner. With respect to Alexander, the Lynch Complaint alleges that Alexander failed to operate the watercraft in a safe and proper manner.

The Admiral insurance policy at issue in this declaratory relief action contains exclusion g., which precludes coverage for watercrafts. The Admiral insurance policy also provides a Specified Operations Endorsement that covers jet ski rental. However, the jet ski rental must be listed on a schedule of jet skis on file with Admiral pursuant to the Boats Endorsement in order for exclusion g. not to apply. The Boats Endorsement also provides additional insured coverage for any watercraft listed on the schedule of jet skis on file with Admiral.

It is undisputed that the jet ski involved in the Lynch Complaint is identified as YAMA3877C020. It is also undisputed that this jet ski was not on any schedule of jet skis on file with Admiral. Therefore, there is no coverage for Kabul and Admiral has no duty to defend Kabul because exclusion g. applies and precludes coverage for the Lynch Complaint for allegations related

to the watercraft. Additionally, because the jet ski YAMA3877C020 is no on any schedule with Admiral, Alexander is not an additional insured under the Admiral insurance policy; and therefore, Admiral has no duty to defend Alexander. Accordingly, Admiral is entitled to summary judgment on its declaratory relief claim that there is no duty to defend or indemnify Kabul and Alexander.

## II. STATEMENT OF UNDISPUTED FACTS

The following are the statement of undisputed facts:

1. Admiral issued insurance policy no. CA000038462-01 for the policy period of May 22, 2020 to May 22, 2021 ("Policy") to its named insured Kabul. [Decl. of Stacie Baratti ¶ 7; Exh. 1 at Admiral_001466].

2. The Commercial General Liability Coverage Form provides Coverage A – Bodily Injury and Property Damage Liability. The Policy provides coverage limits of $1 million each occurrence and $2 million in the aggregate. [Exh. 1 at Admiral_001467].

3. The Insuring Agreement for Coverage A – Bodily Injury and Property Damage Liability provides in pertinent part:

> **COVERAGE A – BODILY INJURY AND PROPERTY DAMAGE LIABILITY**
>
> **1. Insuring Agreement**
>
> **a.** We will pay those sums that the insured becomes legally obligated to pay as damages because of "bodily injury" or "property damage" to which this insurance applies. We have the right and duty to defend the insured against any "suit" seeking those damages. However, we will have no duty to defend the insured against any "suit" seeking damages for "bodily injury" or "property damage" to which this insurance does not apply. We may, at our discretion, investigate any "occurrence" and settle any claim or "suit" that may result.
>
> * * *
>
> No other obligation or liability to pay sums or perform acts or services is covered unless explicitly provided under Supplementary Payments—Coverages **A** and **B**.
>
> **b.** This insurance applies to "bodily injury" and "property damage" damage only if:
>
> **(1)** The "bodily injury" or "property damage" is caused by an "occurrence" that takes place in the "coverage territory";
>
> **(2)** The "bodily injury" or "property damage" occurs during the policy

period; and

**(3)** Prior to the policy period, no insured listed under Paragraph **1.** of Section **II** – Who is An Insured and no "employee" authorized by you to give or receive notice of an "occurrence" or claim, knew that the "bodily injury" or "property damage" had occurred, in whole or in part. If such a listed insured or authorized "employee" knew, prior to the policy period, that the "bodily injury" or "property damage" occurred, then any continuation change or resumption of such "bodily injury" or "property damage" during or after the policy period will be deemed to have been known prior to the policy period.

[Exh 1 at Admiral_001470].

4. The Policy for Coverage A, provides the following exclusions:

**2. Exclusions**

This insurance does not apply to:

* * *

**g. Aircraft, Auto Or Watercraft**

"Bodily injury" or "property damage" arising out of the ownership, maintenance, use or entrustment to others of any aircraft, "auto" or watercraft owned or operated by or rented or loaned to any insured. Use includes operation and "loading or unloading".

This exclusion applies even if the claims against any insured allege negligence or other wrongdoing in the supervision, hiring, employment, training or monitoring of others by that insured, if the "occurrence" which caused the "bodily injury" or "property damage" involved the ownership, maintenance, use or entrustment to others of any aircraft, "auto" or watercraft that is owned or operated by or rented or loaned to any insured.

This exclusion does not apply to:

**(1)** A watercraft while ashore on premises you own or rent;

**(2)** A watercraft you do not own that is:

**(a)** Less than 26 feet long; and

**(b)** Not being used to carry persons or property for a charge;

**(3)** Parking an "auto" on, or on the ways next to, premises you own or rent, provided the "auto: is not owned by or rented or loaned to you or the insured;

**(4)** Liability assumed under any "insured contract" for ownership, maintenance or use of aircraft or watercraft; or

**(5)** "Bodily injury" or "property damage" arising out of:

**(a)** The operation or machinery or equipment that is attached to, or part or, a land vehicle that would qualify under the definition of "mobile equipment" if it were

not subject to a compulsory or financial responsibility law or other motor vehicle insurance law where it is licensed or principally garaged; or

**(b)** The operation of any of the machinery or equipment listed in Paragraph **f.(2)** or **f.(3)** of the definition of "mobile equipment".

[Exh. 1 at Admiral_001473].

5. The Policy contains the following definitions for Coverage A:

**SECTION VI – DEFINITIONS**

**3.** "Bodily injury" means physical injury, physical sickness or physical disease sustained by any one person, including death resulting from any of these at any time. "Bodily injury" does not include shock, emotional, mental or psychological distress, injury, trauma or anguish, or other similar condition, unless such condition results solely and directly from that one person's prior physical injury, physical sickness or physical disease otherwise covered under this insurance.[1]

* * *

**13**. "Occurrence" means an accident, including continuous or repeated exposure to substantially the same general harmful conditions.

* * *

**18. "**Suit" means a civil proceeding in which damages because of "bodily injury", "property damage" or "personal and advertising injury" to which this insurance applies are alleged. . .

**[**Exh. 1 at Admiral_001501, Admiral_001483, Admiral_001484].

6. The Policy provides Endorsement AD 66 65 09 09, effective May 22, 2020:

THIS ENDORSEMENT CHANGES THE POLICY, PLEASE READ IT CAREFULLY.

**SPECIFIED OPERATIONS ENDORSEMENT**

This endorsement modifies insurance provided under the following:

COMMERCIAL GENERAL LIABILITY COVERAGE PART

PRODUCTS/COMPLETED OPERATIONS LIABILITY COVERAGE PART

[1] This definition of "bodily injury" is pursuant to "Bodily Injury Redefined Endorsement," as provided on Form AD 08 42 02 16 of the Policy.

**Schedule**

**Specified Operations:**

Jet Ski Rental

This insurance applies only to "bodily injury", "property damage", "personal advertising injury" and medical expenses caused by the operations shown in the schedule.

[Exh. 1 at Admiral_001511].

7. The Policy provides Endorsement CG 24 12 11 85, effective 5/22/2020:

THIS ENDORSEMENT CHANGES THE POLICY, PLEASE READ IT CAREFULLY

**BOATS**

This endorsement modifies insurance provided under the following:

**COMMERCIAL GENERAL LIABILITY COVERAGE PART SCHEDULE**

**Description of Watercraft:**

PER SCHEDULE OF JET SKIS – ON FILE WITH OUR COMPANY

**Additional Premium**

INCLUDED

(if no entry appears above, information required to complete this endorsement will be shown in the Declaration as applicable to this endorsement.)

**1.** Exclusion g. of COVERAGE A (Section 1) does not apply to any watercraft owned or used by or rented to the insured shown in the Schedule.

**2.** WHO IS AN INSURED (Section II) is amended to include as an insured any person or organization legally responsible for the use of any such watercraft you own, provided the actual use is with your permission.

[Exh. 1 at Admiral_001493].

8. The Policy provides Endorsement AD 66 01 07 15, effective 5/22/2020:

**THIS ENDORSEMENT CHANGES THE POLICY. PLEASE READ IT CAREFULLY.**

**PUNITIVE DAMAGES EXCLUSION**

This endorsement modifies insurance provided under the following

COMMERCIAL GENERAL LIABILITY COVERAGE FORM

* * *

This insurance does not apply to punitive or exemplary damages, in whatever form assessed, awarded against any insured.

[Exh. 1 at Admiral_001502].

9. The Policy provides Endorsement AD 66 66 09 09, effective 5/22/2020:

**THIS ENDORSEMENT CHANGES THE POLICY. PLEASE READ IT CAREFULLY.**

**SPECIFIED OPERATIONS EXCLUSION**

This endorsement modifies insurance provided under the following:

COMMERCIAL GENERAL LIABILITY COVERAGE PART

**SCHEDULE**

**Specified Ongoing and/or Completed Operations(s):**

ANY AND ALL RENTALS OF BOATS, RENTAL OF ATVS/UTVS. ANY AND ALL SALES, SERVICE OR REPAIR WORK.

(If no entry appears above, information required to complete this endorsement will be shown in the Declarations as applicable to this endorsement.)

This insurance does not apply to "bodily injury", "property damage" or "personal and advertising injury" arising out of the operations designated in the Schedule. This exclusion applies whether the operations are or were performed by you on your behalf or whether the operations are ongoing or have been completed by you or on your behalf.

[Exh. 1 at Admiral_001512].

10. The Policy provides Endorsement AI 08 76 02 03, effective 5/22/2020:

**THIS ENDORSEMENT CHANGES THE POLICY. PLEASE READ IT CAREFULLY.**

**WAIVER OR LIABILITY AGREEMENT REQUIRED EXCLUSION**

This endorsement modifies insurance provided under the following

COMMERCIAL GENERAL LIABILITY COVERAGE FORM

* * *

This insurance does not apply to any "bodily injury," "property damage" or "personal and advertising injury" arising out of activities offered by FASTRIP WATERCRAFT RENTALS unless you have

> received a signed agreement and liability release from your client or customer in advance of and "occurrence" or loss of which includes an indemnification clause in which the signee, parent or guardian agrees to hold you harmless for any personal injuries, loss or damage to property.

[Exh. 1 at Admiral_001521].

11. The Lynch Complaint was filed on October 28, 2021 in which Kabul and Alexander are defendants. [ECF No.1, Exh. 1].

12. The Lynch Complaint alleges that on August 21, 2020, Tammy Lynch was a passenger on a Yamaha Waver Runner owed by Kabul and operated by Alexander. [ECF No. 1, Exh 1 at ¶¶ 1-2, 29, 30].

13. The Lynch Complaint alleges that Kabul and Alexander owed a duty of care to Tammy Lynch to act in a safe manner in the operation of the watercraft. [ECF No. 1, Exh. 1 at ¶ 36].

14. The Lynch Complaint alleges that Kabul and Alexander breached their duty to ensure safe and proper operation of the watercraft. [ECF No. 1, Exh. 1 at ¶ 37].

15. The Lynch Complaint alleges that Kabul negligently entrusted the Yamaha watercraft to Alexander without taking necessary and appropriate measures to ensure that Alexander would operate the watercraft in a safe and reasonable manner. [ECF No. 1, Exh. 1 at ¶ 72].

16. The Lynch Complaint alleges that Kabul failed to instruct or warn Alexander about the watercraft's safe usage and operational functions prior to renting and entrusting the watercraft to Alexander. [ECF No. 1, Exh. 1 at ¶ 73].

17. The Lynch Complaint alleges that Kabul failed to instruct or warn Alexander about the proper operation of the watercraft. [ECF No. a, Exh. 1 at ¶ 74].

18. The Lynch Complaint alleges that Kabul failed to operate the watercraft in a safe and proper manner. [ECF No. 1, Exh. 1 at ¶ 75].

19. The Lynch Complaint alleges that Alexander had a duty to safely operate the watercraft he rented from Kabul. [ECF No. 1, Exh. 1 at ¶ 108].

20. The Lynch Complaint alleges that Alexander breached his duty by operating the watercraft in an unsafe and negligent manner. [ECF No. 1, Exh. 1 at ¶ 109].

21. The Lynch Complaint alleges that Alexander brought the watercraft to a sudden stop

in a highly trafficked area and failed to scan the area of other watercrafts. [ECF No. 1, Exh. 1 at ¶ ¶ 110-111].

22. The Lynch Complaint alleges that Alexander violated NRS 488.540 regarding the maintenance of a proper lookout for other vessels. [ECF No. 1, Exh. 1 at ¶ 112].

23. On November 8, 2021, Kabul submitted his claim for the Lynch Complaint to Admiral for coverage under the Policy. [Decl. of Stacie Baratti at ¶ 6].

24. On March 22, 2023, Alexander filed his Answer and Counterclaim against Admiral. [ECF No. 66].[2] This was the first notification of a claim from Alexander that Admiral received. [Decl. Ed Cogan at ¶ 6].

25. Jet Ski registration identification no. YAMA3877C020 was the jet ski involved in the Lynch Complaint. [ECF No. 1 at ¶ 27; ECF No. 14 at ¶ 27; Decl. Stacie Baratti at ¶ 8].

26. On November 15, 2021, Kabul sent an email providing Admiral with the rental documents for the jet ski rented to Alexander. [Decl. Stacie Baratti at ¶ 9; Exh. 2]. The attachments to the email included the jet ski rented to Alexander, identified as YAMA3877C020 with the registration issued on June 25, 2020. [Decl. Stacie Baratti at ¶ 9; Exh. 2 at Admiral_002136].

27. During the investigation of the Kabul claim, Stacie Baratti, the claims adjustor assigned to the Kabul claim reviewed the underwriting file for the Policy. [Decl. Stacie Baratti at ¶ 10]. The underwriting file contained a list of 40 jet skis on file with Admiral from the 2019-2020 policy. [*Id.*] Ms. Baratti was informed by the underwriter that this was the list of jet skis on file with Admiral for the Policy. [*Id*]. The jet ski rented to Alexander that was involved in Lynch Complaint with identification number YAMA3877C020 was not on the list of 40 jet skis on file with Admiral for the Policy. [Decl. Stacie Baratti at ¶ 10; Exh. 3].

28. On November 30, 2021, Ms. Baratti sent an email Stefany Hawk of Greg Eidsness Farm Bureau Financial Services ("Eidsness"), Kabul's insurance agent, stating that the jet ski identified as YAMA3877C020 was not on the list of jet skis on file with Admiral and that it was purchased in June 2020 after the inception of the Policy. [Decl. Stacie Baratti at ¶ 11; Ex. 4]. Ms.

[2] Admiral has filed a Motion to Strike Alexander's Answer and Counterclaim. [ECF No. 72].

Baratti asked Ms. Hawk about any communications she had with Kabul about purchasing new jet skis. [*Id.*]

29. On December 1, 2021, Ms. Baratti received an email from Ms. Hawk explaining that Kabul always provides copies of new jet ski registrations every year. [Decl. Stacie Baratti at ¶ 12; Ex. 5]. Ms. Hawk stated that Kabul provided jet ski registrations for jet skis purchased on May 8, 2020 and June 11, 2020, and she confirmed that these jet skis were added to the Policy. [*Id.*] However, Ms. Hawk stated the jet skis purchased on June 25, 2020, were supposed to be added to the Policy but Kabul gave the list to an employee that died from Covid-19 and she was unable to access that employee's emails. [*Id.*] Ms. Hawks attached the jet skis purchased on May 8, 2020, June 11, 2020, and June 25, 2020 to her email. [*Id.*] Ms. Baratti reviewed the attachments and observed that the jet ski rented to Alexander which was involved in the Lynch Complaint, with identification no. YAMA3877C020 was on the list of jet skis purchased on June 25, 2020 but that list was never provided to Admiral prior to the date of loss. [*Id.*]

30. Ms. Baratti also reviewed the list of jet skis that were provided for the renewal policy no. CA000038462-02, which was for the policy period of May 22, 2021 to May 22, 2022. [Decl. Stacie Baratti at ¶ 13. This list of jet skis contained jet skis purchased in 2020 and 2021; however, the jet ski rented to Alexander that was involved in the Lynch Complaint with identification no. YAMA3877C020 was not on that list. [Decl. Stacie Baratti at ¶ 13; Exh. 6].

31. The jet ski identified as YAMA3877C020 that was involved in the Lynch Complaint was not on any list with Admiral prior to August 21, 2020. [Exh. 3; Exh. 6].

32. Kabul has no documentation that it provided Admiral with the jet ski identified as YAMA3877C020 that was involved in the Lynch Complain prior to August 21, 2020. [Deposition transcript of Kabul's 30(b)(6) witness, Najibullah Noori attached as **Exhibit "9"** at 137:7-8].

33. On December 3, 2021, Admiral issued a reservation of rights letter to Kabul setting forth Admiral's agreement to provide Kabul with a defense of the Lynch Complaint, subject to a full and complete reservation of rights to disclaim coverage and withdraw from defense, including the right to reimbursement of defense fees should it be determined that Admiral has no duty to defend and indemnify Kabul in the Lynch Complaint. [Decl. Stacie Baratti at ¶ 14; Exh. 7].

34. On March 31, 2023, Admiral issued a reservation of rights letter to Alexander setting forth Admiral's agreement to provide Alexander with a defense of the Lynch Complaint, subject to a full and complete reservation of rights to disclaim coverage and withdraw from defense should it be determined that Admiral has no duty to defend and indemnify Kabul in the Lynch Complaint. [Decl. Ed Cogan at ¶ 7].

## III. <u>LEGAL ARGUMENT</u>

### A. Standard for Summary Judgment

Summary Judgment is appropriate "if the movant shows that there is no genuine disputes as to any material fact and the movant is entitled to judgment as a matter of law." Fed.R.Civ.P. 56(a). A fact is "material" if it might affect the outcome of a suit, as determined by the governing substantive law." *Anderson v. Liberty Lobby*, *Inc.*, 477 U.S. 242, 248, 106 S.Ct. 2505, 91 L.Ed.2d 202 (1986). An issue is "genuine" if sufficient evidence exits such that a reasonable fact finder could find for the non-moving party. *Villiarimo v. Aloha Island Air, Inc.*, 281 F.3d 1054, 1061 (9th Cir. 2002). Initially, the moving party bears the burden of proving there are no genuine issues of material fact. *Leisek v. Brightwood Corp*., 278 F.3d 895, 898 (9th Cir. 2002). If the moving party meets this burden, then the non-moving party must demonstrate beyond the pleadings specific facts "that show a genuine issue for trial." *Id*. However, in the insurance context, the insured bears the burden of proving that an underlying action alleges allegations falling withing the insuring agreement of an insurance policy. *Turk v. TIG Ins. Co.*, 616 F.Supp.2d 1044, 1050 (D. Nev. 2009) (noting that an insured bears the initial burden of establishing the potential for coverage under the insurance policies); *Jaynes Corp. v. Am. Safety Indemn. Co.*, No. 2:10-CV-00764-MMD, 2013 AL 5428095, at *3 (D.Nev. Sept. 26, 2013) (citing *Nat'l Auto & Cas. Ins. Co. v. Havas*, 75 Nev. 301, 303 (1959) (stating that to establish coverage under a particular policy, the insured bears the burden of showing a loss "apparently within the terms of [a] policy.").

As described in the Motion, Admiral has satisfied its summary judgment burden by showing that there are no genuine issues of material fact because it is undisputed that (1) coverage is not available to Kabul for the Lynch Complaint because the jet ski at issue was not listed on any schedule

on file with Admiral; and (2) coverage is not available to Alexander as an additional insured because the jet ski at issue in the Lynch Complaint was not listed on any the schedule on file with Admiral.

**B. Arizona Law Applies**

In determining choice of law questions that involve an insurance contract, Nevada follows the Restatement (Second) of Conflict of Laws. *Golden Bear Ins. Co.* v. Evanston Ins. Co., 564 F.Supp.3d 922, 927 (D. Nev. 2021). "Section 188 of the Restatement (Second) of Conflict of Laws sets out the 'most significant relationship' test, establishing a five-factor test in the absence of an effective choice of law provision." *Id*. (citing Restat. 2d of Conflict of Laws, § 188 (2nd 1988)).

> "In the absence of an effective choice of law by the parties, the contacts to be taken into account. . . . to determine the law applicable to an issue include: (a) the place of contracting, (b) the place of negotiation of the contract, (c) the place of performance, (d) the location of the subject matter of the contract, and (e) the domicile, residence, nationality, place of incorporation and place of business of the parties."

*Id*. (quoting Restat, 2d of Conflict of Laws, § 188 (2nd 1988)). "Section 193 of the Restatement (Second) of Conflict of Laws indicates a more specific principle for contracts of liability insurance, indicating that 'the validity of [such a] contract and the rights created thereby are determined by the local law of the state which the parties understood was to be the principal location of the insured risk during the term of the policy. . . .'" *Id*. (quoting Restat. 2d of Conflict of Laws, § 193 (2nd 1988)). Nevada courts have reasoned that the rule in § 193 "is rational because 'the principal location of the risk and costs of the policy were probably established according to' the law of the state where the insured risk was located." *Id*. (quoting *Sotirakis v. USAA*, 106 Nev. 123, 787 P.2d 788, 791 (1990)).

Here, the Policy was issued to Kabul in Arizona. [Exh. 1 at Admiral_001466]. Kabul is located in Arizona. [*Id*.] The jet ski involved in the Lynch Complaint with identification number YAMA3877C020 was registered in Arizona and is garaged in Arizona. [Exh. 2 at Admiral_002136]. Therefore, the principal location of Kabul's risk was in Arizona. Accordingly, Arizona law applies.

**C. Admiral Has No Duty to Defend Defendants**

It is well settled law that the duty to defend is broader than the duty to indemnify. *Quihuis v. State Farm Mut. Auto. Ins. Co.*, 235 Ariz. 536, 544, 334 P.3d 719, 727 (Ariz. 2014). A liability insurer's duty to defend generally arises '[i]f the complaint in the action . . . upon its face alleges

facts which come within the coverage of the liability policy.'" *Id*. (quoting *Kepner v. W. Fire Ins. Co.*, 109 Ariz. 329, 331, 509 P.2d 222, 224 (1973)). However, in Arizona there is no absolute duty to defend when "'the alleged facts [in the complaint] ostensibly bring the case within the policy coverage but other facts which are not reflected in the complaint plainly take the case outside the policy coverage.'" *Id*. (quoting *Kepner*, 109 Ariz. At 331, 509 P.2d at 224.

"An insurance policy 'must be read as a whole, so as to give a reasonable and harmonious effect to all of its provisions.'" *National Fir Ins. Co of Hartdford v. James River Insurance*, 162 F. Supp. 3d 898, 903 (D. Ariz. 2016) (quoting *Charbonneau v. Blue Cross*, 130 Ariz. 160, 634 P.2d 972, 975 (Ct. App. 1981)). Court must "'construe the written terms of [the policy] to effectuate the parties' intent,' and 'to protect the reasonable expectations of the insured.'" *Id*. at 904 (quoting *Liberty Ins. Underwriters, Inc. v. Weitz Co.*. 215 Ariz. 80, 158 P.3d 209, 212 (Ct. App. 2007). In doing so, "the Policy's language 'must be viewed from the standpoint of the average layman who is untrained in the law or the field of insurance.'" *Id*. (quoting *Liritis v. Am. Family Mut. Ins. Co. 204 Arizona,* 61 P.3d at 25-26). Courts interpret unambiguous policies by giving its plain and ordinary meaning and applying it as written. *Id*. However, "[i]f the policy's language is ambiguous, 'Arizona courts no longer resolve the ambiguities in an insurance policy by automatically construing the policy in favor of the insured.'" *Id*. (quoting *Nichols v. State Farm Fire & Casualty Co.*, 175 Ariz. 354, 857 P.2d 406, 408 (Ct. App. 1993)). "Rather 'the rule in Arizona is that [courts] construe a clause subject to different interpretations by examining the language of the clause, public policy considerations, and the purpose of the transaction as a whole.'" *Id.* (quoting *Nichols*, 857 P.2d at 408); *see also Walker v. Auto-Owners Ins. Co.*, 254 Ariz. 17, 15 P.3d 617, 620 (Ariz. 2022) (construing the insurance policy as a whole).

**1. There is no Duty to Defend Kabul Because the Jet Ski in the Lynch Complaint was not Listed on the Schedule with Admiral Prior to August 21, 2020.**

In interpreting the Policy as a whole, the Policy provides that under Endorsement AD 66 65 09 09, Specified Operation Endorsement, that the insurance applies to "bodily injury" caused by the operations in the schedule, which is jet ski rental. [Exh. 1 at Admiral_001511]. So, only operations of jet ski rental are covered. But, under Endorsement CG 24 12 11 85, Boats, the rented jet ski must

be on a schedule on file with Admiral. [Exh. 1 at Admiral_001493]. Indeed, the Boats Endorsement specifically describes the watercraft as "Per Schedule of Jet Skis-On File with our Company." [*Id*.] If the jet ski that was rented is on file with Admiral, then Exclusion g. of Coverage A does not apply to that jet ski. [*Id*.].

In *Harbor Ins. Co. v. United Services Auto. Ass'n*, 114 Ariz. 58, 61, 559 P.2d 178, 181 (Ct. App. Ariz. 1976), the court held that a tractor was not listed on the policy's schedule; therefore, it was not covered by the policy. The Arizona Court of Appeals explained that schedules were a part of the policy as much as the insuring clauses and the definitions. *Id*. The court also stated that "[t]he scheduling of automobiles is not merely for the convenience of assessing premiums but it itself a declaration of the limitation of the hazards assumed.'" *Id*. The court analyzed a case in which the Supreme Court of Wisconsin held that the policy included a schedule of 22 specific vehicles and it did not cover a forklift because it was not among the vehicles listed. *Id*. (citing *D'Angelo v. Cornell Paperboard Products Co.*, 59 Wis.2d 46, 207 N.W.2d 846 (1973)). The Arizona Court of Appeals concluded that "even assuming the tractor is an automobile, it is not covered by the Harbor policy since it is not one of the vehicles listed on the schedule." *Harbor Ins. Co.*, 114 Arizona at 61, 559 P.2d at 181.

Other court have also found that requiring an item to covered under the policy to be scheduled is not ambiguous and there is no coverage if the item is not listed as required by the policy. The Second Circuit Court of Appeals, interpreting Connecticut law, noted that "[t]he umbrella policy specifically recites that the policy does not cover liabilities arising from the use of an ATV unless the ATV is 'described as being covered in the declarations.'" *Arrowood Indem. Co. v. King*, 699 F.3d 735, 739 (2nd Cir. 2012). The Second Circuit Court of Appeals explained that there was no ambiguity in requiring the ATV to be listed and failure to list the ATV "was fatal to coverage under the umbrella policy." *Id*.

A Mississippi insured's failure to update the listed property was not a mutual mistake, but rather a unilateral mistake of the insured; the insurer was only obligated to insure the listed property and that is what it did. *Seago v. Home Ins. Co. of Illinois*, 373 S.2d 808, 810 (Miss. 1979).

The Eleventh Circuit Court of Appeals concluded that a watercraft was not covered under the policy because it was not listed on a schedule. *Estevez v. Northern Assur. Co. of America*, 428 Fed. Appx. 966, 968 (11th Cir. 2011). The Eleventh Circuit Court of Appeals explained:

> Officer Estevez's claim that the 'watercraft' referred to in the protection and indemnity section encompasses all watercraft owed or operated by the City is equally without merit. First, the declarations pages show that '5 Work Boats' are included under this provision. Further, the City knew that only listed vessels were included in the Policy, as evidenced by its request to add an additional vessel on its most recent renewal. Lastly, the City chose which subsections of protection and indemnity to include in its policy. It could have chosen to cover 'other owned boats,' or 'rental boats,' but instead the City chose only the 'work boats' and 'marine operators' subsections.

*Id*

Like the courts referenced above, jet ski YAMA3877C020, which was the jet ski involved in the Lynch Complaint, was not on any schedule on file with Admiral. In investigating the claim, the claims adjustor, Stacie Baratti, reviewed the underwriting file for the Policy and reviewed the list of 40 jet skis from the 2019-2020 policy of insurance. [Decl. Stacie Baratti at ¶ 10]. Ms. Baratti was informed by the underwriter that this was the list of jet skis on file with Admiral for the Policy. [*Id.*] This list of jet skis does not contain YAMA3877C020, which was the jet ski involved in the Lynch Complaint. [Exh. 3]. Ms. Baratti also reviewed the list of jet skis for the renewal policy CA000038462-02, which contained a list of jet skis purchased in 2020 and 2021, but YAMA3877C020 was not on that list either. [Decl. Stacie Baratti at ¶ 13]. Kabul was informed that this list was reviewed in the December 3, 2021 Reservation of Rights Letter. [Exh. 7].

Moreover, Kabul's insurance agent, Edisness, confirmed that Kabul purchased additional jet skis after the inception of the Policy. [Exh. 5]. Eidsness stated that the jet skis purchased on May 8, 2020 and June 11, 2020 were sent in to be added to the Policy and the jet skis purchased on June 25, 2020 were supposed to added to the Policy and that this needed to be corrected. [*Id.*] Ms. Baratti reviewed the attachments that Eidsness provided and observed that YAMA3877C020 was on the list of jet skis purchased on June 25, 2020 but that list was never provided to Admiral. [Decl. Stacie Baratti at ¶ 12].

Moreover, Kabul has no documentation that it provided Admiral with the jet ski identified as YAMA3877C020 that was involved in the Lynch Complaint prior to August 21, 2020. [Exh. 9 at 137:7-8].

Each of the allegations in the Lynch Complaint reference the watercraft that was owned by Kabul and rented to Alexander. [ECF No. 1, Exh. 1 at ¶¶ 1-2, 36-37, 72-75]. Because the allegations in the Lynch Complaint specifically mention the watercraft, the watercraft needs to be listed on the schedule with Admiral pursuant to the Boats Endorsement. [*Id.*] Because the jet ski that was involved in the Lynch Complaint, YAMA3877C020, was not listed on any schedule with Admiral, there is no coverage for the Lynch Complaint. Indeed, Exclusion g. applies and excludes the jet ski from coverage under the Policy. Therefore, Admiral has no duty to defend Kabul and is entitled to summary judgment as a matter of law.

**2. There is No Duty to Defend Alexander Because he is not an Additional Insured Under the Policy.**

Alexander is seeking coverage under the Policy as an additional insured. The Boats Endorsement specifically provides: "WHO IS AN INSURED (Section II) is amended to include as an insured any person or organization legally responsible for the use of **any such watercraft** you own, provided the actual use is with your permission." [Exh. 1 at Admiral_001493 (**emphasis added**)]. The Boats Endorsement defines watercraft as "PER SCHEDULE OF JET SKIS-ON FILE WITH OUR COMPANY." [*Id.*]. The phrase "any such watercraft" means the watercraft listed on any schedule with Admiral. This is not ambiguous and is clear in the Endorsement. Because YAMA3877C020, the jet ski involved in the Lynch Complaint, was not on any schedule with Admiral, Alexander cannot be deemed an additional insured under the Policy.[3] Therefore, Admiral has no duty to defend and is entitled to summary judgment as a matter of law.

**D. Because Admiral Has No Duty to Defend, It Has No Duty to Indemnify.**

The terms of the policy determines the scope of the insurer's duty to indemnify. *St. Paul Guardian Ins. Co. v. Town of Colorado City*, CV-13-08297-PCT; 2015 WL 4271410, at *3 (D. Ariz.

---

[3] In the March 31, 2023 Reservation of Rights Letter to Alexander, Admiral specified the schedules that were reviewed and that YAMA3877C020 was not on the schedules that Admiral had. [Exh. 8].

July 13, 2015). "But unlike the duty to defend, the duty to indemnify 'hinges not on the facts' alleged in a lawsuit; instead, it hinges 'on the facts (proven, stipulated or otherwise established) that actually create the insured's liability.'" *Id.* (quoting *Colo. Cas. Ins. Co. v. Safety Control Co.*, 288 P.3d 764, 772 (Ariz. Ct. App. 2012)). "'It is well settled that because the duty to defend is broader than the duty to indemnify, a determination that there is no duty to defend automatically means that there is no duty to indemnify.'" *K.B. ex rel. Kanteiko v. Hartford Cas. Ins. Co.,* 608 Fed. Appx. 492 (9th Cir. 2015) (quoting *Certain Underwriters at Llyod's of London v. Superior Court*, 24 Cal. 4th 945, 103 Cal. Rptr. 2d 672, 16 P.3d 94, 104 (2001)).

As shown above, there is no coverage under the Policy because it is undisputed that the jet ski involved in the Lynch Complaint was not on any schedule with Admiral prior to August 21, 2020. Because the jet ski involved in the Lynch Complaint was not on a schedule with Admiral then Exclusion g. applies to Kabul and the allegations related to the jet ski are not covered. Also, because the jet ski was not on any schedule with Admiral, then Alexander is not an additional insured. Since there is no coverage, Admiral has no duty to defend Kabul or Alexander, and accordingly it has no duty to indemnify Kabul and Alexander in the Lynch Complaint. Accordingly, Admiral is entitled to summary judgment as a matter of law.

In addition, the Policy has a punitive damages exclusion. [Exh. 1 at Admiral_001502]. The Lynch Complaint generally seeks punitive damages against all defendants. As such, regardless of the duty to defend, there is no coverage for any punitive damages.

/ / /

/ / /

/ / /

/ / /

/ / /

## IV. <u>CONCLUSION</u>

Based on the undisputed facts and case law, Admiral has no duty to defend or indemnify Kabul or Alexander as a matter of law. Accordingly, Admiral requests that the Court grant summary judgment on its declaratory relief action.

Dated this 14th day of November, 2023.

ARMSTRONG TEASDALE LLP

By: */s/ Tracy A. DiFillippo*
TRACY A. DIFILLIPPO, ESQ.
Nevada Bar No. 7676
7160 Rafael Rivera Way, Suite 320
Las Vegas, Nevada 89113

*Attorneys for Plaintiff Admiral Insurance Company*

**CERTIFICATE OF SERVICE**

Pursuant to Fed.R.Civ.P.5(b), and Section IV of District of Nevada Electronic Filing Procedures, I certify that I am an employee of ARMSTRONG TEASDALE LLP, and that the foregoing was served:

☒ via electronic service to the address(es) shown below:
johnshook@shookandstone.com
rschumacher@grsm.com
thomasc@injuryhelpnow.com

☐ via the U.S. Postal Service at Las Vegas, Nevada, in a sealed envelope, with first-class postage prepaid, on the date and to the address(es) shown below:

John B. Shook, Esq.
SHOOK & STONE, CHTD.
710 South Fourth Street
Las Vegas, NV 89101
*Attorneys for Defendants Lynch*

Thomas Christensen, Esq.
1000 South Valley View Blvd.
Suite P
Las Vegas, NV 89107
*Attorneys for Defendants Kabul and Darryl Peter Alexander, Jr.*

Robert E. Schumacher, Esq.
Chad Harrison, Esq.
GORDON REES SCULLY MANSUKHANI, LLP
300 South 4th Street, Suite 1550
Las Vegas, NV 89101
*Attorneys for Third-Party Defendant Gregg Eidsness Farm Bureau Financial Services*

Date: November 14, 2023

*Christie Rehfeld*
An employee of Armstrong Teasdale LLP

**INDEX OF EXHIBITS**


| EXHIBIT NO. | DESCRIPTION | PAGE NO. |
|---|---|---|
| 1. | Admiral issued insurance policy no. CA000038462-01 for the policy period of May 22, 2020 to May 22, 2021 (Redacted) | 1-60 |
| 2. | November 15, 2021 email and attachments, bearing Bates numbers Admiral_002134-Admiral_002153 | 61-80 |
| 3. | Kabul's application for the 2019-2020 policy with the list of jet skis that was on file with Admiral for the Policy, bearing Bates numbers Admiral_000083-Admiral_000111 | 81-109 |
| 4. | November 30, 2021 email, bearing Bates number Admiral_002178 | 110 |
| 5. | December 1, 2021 email and attachments, bearing Bates numbers Admiral_002189-Admiral_002199 | 111-121 |
| 6. | List of jet skis for the renewal policy CA000038462-02, bearing Bates numbers Admiral_000631-Admiral_00659 (Redacted) | 122-150 |
| 7. | December 3, 2021 reservation of rights letter, bearing Bates numbers Admiral_002224-Admiral_002233 | 151-160 |
| 8. | March 31, 2023 reservation of rights letter, bearing Bates numbers Admiral_003510-Admiral_003518 | 161-169 |
| 9. | Deposition transcript of Kabul's 30(b)(6) witness, Najibullah Noori | 170-173 |